REYNOLDS v POLEN

Docket No. 189715. Submitted November 20, 1996, at Detroit. Decided February 25, 1997, at 9:15 A.M.

Donna L. and James H. Polen, while represented by attorney Edward C. Reynolds, Jr., and Gleicher & Reynolds, P.C. (G&R), pursuant to a contingent fee agreement, brought a medical malpractice action in the Monroe Circuit Court against Anthony E. Melonakos, M.D., and others. After discovery and mediation, and one day before the start of trial, the plaintiffs discharged their attorneys and retained on a contingent fee basis the law firm of Fieger, Fieger & Schwartz, P.C. (FF&S), as replacement counsel. G&R could not start the Polens' trial because G&R's presence at another trial was required by the judge in that trial. The trial court in the Polens' case, William F. LaVoy, J. initially refused to grant an adjournment, but later granted one and allowed G&R's withdrawal, finding that G&R acted unreasonably in notifying the court at the last minute of their scheduling conflict. FF&S thereafter negotiated a monetary settlement for the Polens, from which the trial court awarded to FF&S its contingent fee and costs and to G&R their costs but no attorney fee. Before the trial court awarded attorney fees, FF&S and G&R had agreed that any award of attorney fees to G&R would be from FF&S's share of the settlement and not from the Polens' share. G&R appealed.

The Court of Appeals *held*:

An attorney retained on a contingent fee arrangement who is discharged before completing the contracted-for work and who does not engage in disciplinable conduct prejudicial to the client's case or conduct contrary to public policy is entitled to compensation for the reasonable value of his services on the basis of quantum meruit as best determined by evaluating the actual agreement between the client and the attorney rather than assessing reasonable compensation in the abstract. The cost of duplication or modification of work already performed should be borne by the discharged attorney where that attorney is substantially responsible for the change in counsel.

In this case, in the absence of disciplinable conduct prejudicial to the Polens' case or conduct contrary to public policy on the part

of G&R, G&R are entitled to a recovery of attorney fees based on quantum meruit. The order denying attorney fees to G&R is reversed, and the case is remanded for an award of attorney fees to G&R.

Reversed and remanded.

1. ATTORNEY AND CLIENT — FEES — DISCHARGE BEFORE COMPLETION OF WORK — QUANTUM MERUIT.

An attorney who is discharged before completing the contracted-for work and who does not engage in disciplinable conduct prejudicial to the client's case or conduct contrary to public policy is entitled to compensation for the reasonable value of the attorney's services on the basis of quantum meruit.

2. ATTORNEY AND CLIENT — FEES — QUANTUM MERUIT.

Compensation for the reasonable value of an attorney's services on the basis of quantum meruit is best determined, not by assessing reasonable value in the abstract, but by evaluating the actual agreement between the client and the attorney.

*Mark Granzotto* and *Edward C. Reynolds, Jr.*, for Edward C. Reynolds, Jr., and Gleicher & Reynolds, P.C.

*Fieger, Fieger & Schwartz, P.C.* (by *Michael Alan Schwartz*), for Donna L. Polen and James H. Polen.

Before: TAYLOR, P.J., and MARKMAN and P. J. CLULO*, JJ.

MARKMAN, J. Intervening plaintiffs, Edward C. Reynolds, Jr., and Gleicher & Reynolds, P.C. (G&R), appeal as of right a September 28, 1995, order disbursing attorney fees. We reverse and remand.

This matter stems from a dispute between G&R and the firm of Fieger, Fieger & Schwartz, P.C. (FF&S) regarding attorney fees arising out of an underlying medical malpractice suit. G&R initially represented Donna and James Polen pursuant to a contingent fee

---

* Circuit judge, sitting on the Court of Appeals by assignment.

agreement. After discovery (including the retention of expert witnesses) and mediation, the Polens terminated the services of G&R and retained FF&S under a contingent fee agreement.

The following circumstances surrounded the Polens' termination of G&R. Pursuant to an official trial notice, March 6, 1995, was one of several alternate dates set for the Polens' trial. G&R knew at least two weeks before that date that they had a possible scheduling conflict—an ongoing trial that required both of G&R's trial attorneys to be in another courtroom.[1] However, they did not inform the court of this conflict until Thursday, March 2, 1995, in response to a call from the court informing G&R that the Polen trial would begin on March 6, 1995. On Friday, March 3, 1995, G&R filed an emergency motion to adjourn which the trial court denied. G&R informed the Polens on the same day that no one from G&R would be able to be present to start trial on March 6, 1995, but that they would prepare an interlocutory appeal to this Court and that another attorney would be present in their stead to again move for an adjournment. This was apparently acceptable to the Polens at the time. However, on Sunday, March 5, 1995, the Polens discharged G&R. Despite the discharge, the attorney arranged for by G&R appeared on the Polens' behalf on March 6, 1995, to again move for an adjournment. On March 16, 1995, the trial court issued an order permitting the withdrawal of G&R and adjourning the trial date. FF&S filed an appearance on March 30, 1995.

---

[1] The trial judge in the other matter ordered that both trial attorneys from G&R be present on March 6, 1995, and offered to contact the judge in the present matter to so inform him.

In June 1995, FF&S negotiated a $133,000 settlement on behalf of the Polens.[2] At a hearing, the parties agreed that the total costs were $9,852.72 and that the net recovery was therefore $123,147.28, of which the Polens' share was $82,098.19. The court immediately awarded the Polens their share of the recovery. G&R and FF&S agreed that the Polens should be awarded their share of the settlement and that any compensation due G&R should come from the portion of the recovery to be awarded to FF&S under its contingent fee agreement.[3] After a separate hearing regarding costs and attorney fees, the trial court awarded G&R $9,825.08 in costs but declined to award them any attorney fees. It awarded FF&S $27.64 in costs and $41,049.09 in attorney fees. On appeal, G&R argue that the trial court erred in refusing to award them attorney fees on a quantum meruit basis.

We begin with the premise that "[t]he law creates a lien of an attorney upon the judgment or fund resulting from his services." *Ambrose v Detroit Edison Co*, 65 Mich App 484, 487-488; 237 NW2d 520 (1975). In *Plunkett & Cooney, PC v Capital Bancorp Ltd*, 212 Mich App 325, 331; 536 NW2d 886 (1995), which

---

[2] A mediation evaluation of $150,000 obtained during G&R's representation had been rejected earlier by both parties.

[3] Accordingly, the present case comes to us in a posture where anything awarded to G&R on a quantum meruit basis will come directly out of the share of FF&S. Whether there are circumstances in which successive attorneys might not be limited to competing with one another for a proportion of a fixed share but in which a client who bears some responsibility for an attorney's discharge might be liable in quantum meruit to successive attorneys in an amount greater than negotiated with either one individually is an issue that we need not address in this case. However, until this issue is resolved, a successor attorney in a case such as the instant one will be compelled to recognize that his share of the client's recovery may be determined to a significant degree by the valuable work put into the case by the attorney's predecessor.

addressed the issue of compensation for a law firm under a fixed-fee agreement, this Court stated:

> [A] client has the right to discharge a lawyer at any time. However, the client is subject to liability for payment for the lawyer's services.

The decision whether to impose an attorney's lien lies within the trial court's discretion, *Ambrose, supra* at 489, and such decisions are reviewed for abuse of discretion.

A clear line of authority indicates that when a client wrongfully terminates an attorney or an attorney rightfully withdraws from a matter, recovery of attorney fees on a quantum meruit basis is appropriate. The *Ambrose* Court stated, at 488:

> When an attorney withdraws from a case, his reasons for doing so determine whether the lien will be preserved:
> "An attorney who withdraws from a suit without cause loses his inchoate right to a lien on the ultimate recovery . . . . But where an attorney is justified in refusing to continue in a case, he does not forfeit his lien for services already rendered." 7 CJS, Attorney and Client, § 220, pp 1164-1165.

"[A]n attorney on a contingent fee arrangement who is wrongfully discharged, or who rightfully withdraws, is entitled to compensation for the reasonable value of his services based upon *quantum meruit*, and not the contingent fee contract." *Ambrose, supra* at 491. See also *Plunkett & Cooney, supra* at 329-330; *Morris v Detroit*, 189 Mich App 271, 278; 472 NW2d 43 (1991); *Ecclestone, Moffett & Humphrey, PC v Ogne, Jinks, Alberts & Stuart, PC*, 177 Mich App 74, 76; 441 NW2d 7 (1989); *Law Offices of Stockler, PC v Semaan*, 135 Mich App 545, 550; 355 NW2d 271 (1984). The *Plunkett & Cooney* Court explained that

recovery in such circumstances is based on quantum meruit rather than the amount provided for in a contingent fee agreement because a client has an absolute right to discharge an attorney and is therefore not liable under the contract for exercising that right. *Plunkett & Cooney, supra* at 330, citing *Ambrose*.

There is also authority indicating circumstances under which quantum meruit recovery for legal services is inappropriate. *Hightower v Detroit Edison Co*, 262 Mich 1; 247 NW 97 (1933), involved an attorney-client relationship established by inappropriate solicitation of an accident victim by a middleman. The Court denied quantum meruit recovery to the attorney on the basis that "the judgment of the court will not be given in aid of or to encourage unprofessional conduct infringing the integrity of judicial proceedings." *Hightower, supra* at 13. In *Rippey v Wilson*, 280 Mich 233; 273 NW 552 (1937), the plaintiffs, patent attorneys, represented the defendant in connection with several inventions. The defendant claimed that plaintiffs forfeited all compensation by abandoning him and engaging in misconduct. The Court reduced the amount of the judgment for plaintiffs to cover only services that "produced definite valuable results to plaintiff" and held at 245:

> An attorney may lose his right to fees for unprofessional conduct or abandonment of his client's case. But we find no authority that where the services are severable, misconduct as to one phase forfeits fees as to another. Such a rule would be generally unfair and is contrary to the authorities. [Citations omitted.]

In *Kukla v Perry*, 361 Mich 311; 105 NW2d 176 (1960), through a series of transactions, an attorney ended up as the controlling shareholder of his client's corpora-

tion, with ownership of the corporation's physical property, and with ownership of the client's real property. The Court quoted the chancellor's conclusions with approval at 326:

> [T]he conduct of [the attorney] in this matter did not measure up to the standard required of an attorney toward his client. By such conduct, an attorney may lose his right to any fee.

These cases indicate that quantum meruit recovery of attorney fees is barred when an attorney engages in misconduct that results in representation that falls below the standard required of an attorney (e.g., disciplinable misconduct under the Michigan Rules of Professional Conduct) or when such recovery would otherwise be contrary to public policy.

These two lines of authority, however, cover only those cases at the two ends of the spectrum in which the appropriateness or lack of appropriateness of quantum meruit recovery is relatively clear. These correspond with expectations that an attorney who is wrongfully discharged or who rightfully withdraws from representation would be entitled to quantum meruit recovery; similarly, one would expect that an attorney who engaged in disciplinable misconduct prejudicial to his client or conduct contrary to public policy would be ineligible for such recovery. These authorities, however, do not address the "in-between" situations in which a client terminates an attorney-client relationship for reasons that contain some justification but in which the attorney has not engaged in misconduct that makes it inappropriate to award quantum meruit recovery. While *Ambrose* announced the rule that an attorney "who is wrongfully dis-

charged, or who rightfully withdraws" is entitled to quantum meruit recovery of attorney fees, we note that in *Ambrose* and all the cases following it cited above, quantum meruit attorney fees awards were found appropriate. Nor did these cases establish any rule precluding a quantum meruit award of attorney fees under different circumstances. Because a client has an implied right to discharge an attorney, see *Plunkett & Cooney, supra,* it will frequently be the case that a client's termination of an attorney-client relationship will not be "wrongful" but that the attorney's conduct will also not be "wrongful" to the extent that it should bar quantum meruit recovery of attorney fees. In such circumstances, it would be unfair not to compensate the attorney for work completed before the discharge under the equitable doctrine of quantum meruit. Like other persons who provide services for a fee, an attorney who is discharged before completing contracted-for work is generally entitled to payment for valuable services rendered before the discharge.[4] We conclude that as long as a discharged attorney does not engage in disciplinable misconduct prejudicial to the client's case or conduct contrary to public policy that would disqualify any quantum meruit award, a trial court should take into consideration the nature of the services rendered by an attorney before his discharge and award attorney fees on a quantum meruit basis.

Here, the trial court issued a written opinion in which it concluded:

---

[4] We note that, unlike other situations involving the provision of services under a contract, in the attorney-client context a client may terminate an attorney-client relationship without breaching the contract. See *Plunkett & Cooney, supra* at 330, and the comment to MRPC 1.16.

> Alerting this Court of a scheduling conflict at the last minute before trial in the hopes of adjournment is . . . unreasonable. This Court therefore agrees that Gleicher & Reynolds did not withdraw for good cause.
>
> Thus, Gleicher & Reynolds is not entitled to receive fees based on quantum meruit . . . .

This opinion indicates that the trial court found that the Polens' discharge of G&R was not wrongful.[5] However, the opinion also indicates that the court found that G&R did not engage in any disciplinable misconduct or conduct contrary to public policy that would make quantum meruit recovery inappropriate. The court simply found G&R's behavior "unreasonable." Even if we accept this characterization of G&R's conduct, we find that G&R is entitled to quantum meruit recovery of attorney fees for work performed.

We accordingly remand this matter for determination of the quantum meruit attorney fee recovery to which G&R is entitled. We note that quantum meruit is generally determined by simply multiplying the number of hours worked by a reasonable hourly fee. See, e.g., *Ecclestone, supra* at 76. Recently, a panel of this Court attempted to refine the process of determining quantum meruit recovery by referring to the terms of the underlying contract rather than deciding what constitutes reasonable compensation for services rendered in the abstract. *Morris, supra.*[6] In a case involv-

---

[5] G&R argue that they were either wrongfully terminated or that they rightfully withdrew in response to being discharged. We find no clear error in the trial court's implicit determination that the Polens did not wrongfully discharge G&R. Because G&R were discharged, the appropriateness of their subsequent withdrawal would not bring them within the purview of the *Ambrose* rule regarding quantum meruit recovery of attorney fees.

[6] Similarly, with respect to a fixed-fee agreement for legal services, this Court determined that the value of the services at issue was the percent-

ing a contingent fee agreement, the *Morris* Court stated, at 278-279:

> We recognize that there is no precise formula for assessing the reasonableness of an attorney's fee. Nevertheless, in *Crawley v Schick*, 48 Mich App 728, 737; 211 NW2d 217 (1973), this Court enumerated several nonexclusive factors appropriately considered for such a determination, including:
>
> (1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client.
>
> While the trial court should consider these factors, its decision need not be limited to these guidelines. We believe that the trial court may also properly consider that the attorney originally agreed to render services on a contingency basis. Such a consideration would allow the court to consider the degree of risk undertaken by an attorney who was prematurely discharged. Accordingly, it would be appropriate for the court to award the attorney a larger fee, provided that the fee was not in excess of that permitted under MCR 8.121. . . .
>
> . . . [O]ur review of the trial court's findings leads us to conclude that [discharged counsel] was . . . entitled to the lion's share of the fee. The record discloses that the trial court carefully considered a variety of factors regarding the quality of [discharged counsel's] representation and the magnitude of his success. . . . On the basis of the record before us, we conclude that the trial court's finding that [discharged counsel] had completed 99 44/100 percent of the services contemplated by the contingency fee agreement was not clearly erroneous. We find, therefore, that the trial court should have awarded [discharged counsel] 99 44/100 percent of the one-third contingency fee. [Citations omitted.]

___

age of the services completed multiplied by the contract price. *Plunkett & Cooney, supra* at 331.

We believe that a trial court is in the best position to assess an attorney's contribution to a case because trial courts are aware of the strengths and weaknesses of cases before them, the time and effort expended by the attorneys, and changes in the parties' leverage resulting from changes in counsel (e.g., due to attorneys' skill or reputation). We believe that the *Morris* approach to quantum meruit—one compensates an attorney for completed work on the basis of evaluating as closely as possible the actual deal struck between the client and the attorney rather than an assessment of reasonable compensation in the abstract—is also the proper means of evaluating quantum meruit in cases such as the instant one.

One factor not addressed in *Morris* that must be considered in cases where the discharge of counsel is not wrongful relates to burdens upon the client and the successor counsel that result from changes in counsel. Changes in counsel generally result in some duplication or modification of work by new counsel. Who should bear the costs of this duplicate work depends on the circumstances surrounding the change in counsel. Where the trial court determines that discharged counsel bears substantial responsibility for the change in counsel, it should deduct the costs of work that had to be duplicated or modified from the discharged counsel's quantum meruit recovery. However, no such deduction needs to be made when the client bears substantial responsibility for the change in counsel.

For these reasons, we reverse the order denying attorney fees to G&R and remand for determination of a proper quantum meruit award of attorney fees to G&R. On remand, we direct the trial court to follow

*Morris* and determine the percentage of the one-third fee that represents G&R's overall contribution to the settlement.

Reversed and remanded. We do not retain jurisdiction.