*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MOSS COMPANY, LLC,

        Plaintiff-Appellant,

v

DONNIE RAY MOSS,

        Defendant/Third-Party Plaintiff-
        Appellee,

and

SHIRLEY WALLER,

        Defendant/Third-Party Plaintiff,

and

ROBERT BEAR and DANIEL FERGUSON,

        Third-Party Defendants-Appellants,

and

SCHENK & BRUETSCH PLC,

        Appellee.

UNPUBLISHED
March 23, 2023

No. 360892
Wayne Circuit Court
LC No. 21-006317-CB

Before: CAVANAGH, P.J., and MARKEY and BORRELLO, JJ.

PER CURIAM.

      Plaintiff, Moss Company, LLC, and third-party defendants, Robert Bear and Daniel Ferguson, appeal by leave granted an order imposing an attorney charging lien in favor of appellee

-1-

Schenk & Bruetsch, PLC (S&B).[1]  We affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

## I.  FACTS

Moss Company was formed in 2016 and is a demolition contractor performing work in Detroit.  Its three members were Bear, Ferguson, and defendant Donnie Ray Moss.  In March 2021, a dispute arose between Donnie Ray and the other two members of the company.  Moss Company retained appellee S&B and filed a lawsuit against Donnie Ray.[2]  The complaint alleged that Donnie Ray had broken into the company's office, stolen company assets, diverted the company's receivables into his own private account, and locked the company's agents out of "its most critical platform"—its profile within Detroit's vendor portal, maintained by the Oracle System.

Moss Company asserted that Donnie Ray had complete control over the company's profile in Detroit's vendor portal, and was directing the company's "receivables" into a secret bank account.  Ferguson testified in an affidavit that "[t]he Company's profile within the Oracle System is its most important asset."  Moss Company used Detroit's vendor portal to submit payment requests and work-progress details, and to receive payments from Detroit.  Ferguson stated, "The Company cannot begin to perform [its] work until it has control of its profile within the Oracle System because the Company will have no way of submitting work progress reports" and "[m]ore importantly, the Company will not be able to receive payment because it doesn't control the Oracle System."  According to Ferguson, without access to the Oracle System, "its vendors will not be paid, . . . the Company will be destroyed because of its [$2,000,000] bonding obligation," and Moss Company would be "unable to continue [its] work in the demolition industry."

Along with the complaint, appellee S&B filed on behalf of Moss Company an ex parte motion for a temporary restraining order against Donnie Ray.  Donnie Ray in turn filed a third-party complaint against Bear and Ferguson, alleging fraud and accusing them of diverting assets from the company for their own personal gain.  Appellee S&B also represented Bear and Ferguson in that third-party case.

The trial court issued a preliminary injunction on July 15, 2021, prohibiting Donnie Ray from holding himself out as an agent or officer of Moss Company and from accessing Moss Company's vendor profile or other accounts.  The court also ordered him to "immediately turnover all login credentials and passwords" needed for Detroit's vendor profile.  Later, in a stipulated order dated January 11, 2022, Donnie Ray (1) admitted that he violated the preliminary injunction by diverting $10,461.44 from Moss Company accounts to himself and others, (2) admitted to being in contempt of court, (3) agreed to repay the funds he took from Moss Company, and (4) agreed to pay $2,040.50 in Moss Company's attorney fees to S&B.

---

[1] *Moss Co, LLC v Donnie Ray Moss*, unpublished order of the Court of Appeals, entered June 13, 2022 (Docket No. 360892).

[2] Shirley Waller, Moss Company's former secretary, was a named defendant and third-party plaintiff but was ultimately dismissed by stipulation of the parties and is not a party to this appeal.

On February 10, 2022, Moss Company, Bear, and Ferguson (collectively appellants), decided to terminate their relationship with appellee S&B and moved to substitute attorney Sanford A. Schulman. Appellants asserted a breakdown in the attorney-client relationship involving a fee dispute and stated that S&B refused to stipulate to substitution of counsel unless appellants would agree to a number of provisions, including that: (1) S&B was terminated without cause, (2) appellants needed to "control the costs of litigation" and "hired replacement counsel on a flat fee basis," (3) but for S&B's efforts, Moss Company "would not have any income from its contracts with the City of Detroit," and (4) Moss Company owed S&B $42,524.60. Appellants further reported that S&B was seeking an attorney charging lien and argued that such liens generally attach to funds or judgments obtained through the attorney's services, not to real property, and that "an attorney-lien should not be used as a replacement for litigating a fee dispute nor should it be used to delay substitution of counsel."

Appellee S&B did not object to the substitution of counsel, but argued that the key issue in appellants' case was to regain control of Moss Company's access to Detroit's vendor portal, and that, because S&B's litigation efforts directly resulted in orders restoring Moss Company's control over Detroit's vendor portal, S&B was entitled to a common-law charging lien on those funds. S&B attached to its response a proposed order setting forth a charging lien of $55,295.40 to be attached to any proceeds due to Moss Company from Detroit.[3] In support, S&B submitted billing invoices, the retainer agreement between appellants and S&B, and affidavits attesting to the accuracy of the outstanding invoices.

At a March 3, 2022 hearing, Schulman, representing appellants, expressed appellants' frustration with S&B's services, and further stated that "the point is [appellants are] just not able to bear the fees that's been coming without, with what does not look like an early resolution, but I'm hoping to get it to where it needs to go." The trial court remarked that Schulman's substitution was "welcome" and "no problem," and that the issue here was "the lien." Schulman reiterated that he was "trying to use [appellants'] finances effectively because that's the point, they cannot handle anymore," and that he would try "to resolve [the case] using an economic approach as opposed to what's extremely expensive." Schulman added that an "appropriate lien if any" should focus on "what the property [was] about," and not "on prospective assets of the City of Detroit's contract." He also stated that any lien should be based on the trial court's determination of a reasonable amount after an evidentiary hearing.

Appellee S&B argued again that as a direct result of its litigation efforts, Moss Company was able to regain control of its profile within Detroit's vendor portal, which allowed it to work and be paid. S&B maintained that "[t]hose funds are subject to an order of this Court" and "are very much within . . . the Court's jurisdiction." S&B stated that, but for its efforts, Moss Company "wouldn't exist and I'd ask the Court to impose a charging lien in its order . . . ."

Donnie Ray, through counsel, did not object to the substitution of counsel or the lien, but asked that the lien "only come out of Mr. Bear and Mr. Ferguson's profits, because our position is

---

[3] This amount comprised $42,966.15 in final invoices Moss Company owed: $6,315 Moss Company owed on behalf of Bear, and $6,014.25 for the time incurred in addressing appellants' motion for substitution.

that just as Bear is trying to screw [S&B], he screwed [Donnie Ray], and I think the proofs are going to show that." Appellee S&B commented that it understood Donnie Ray's position, but because Moss Company was indebted to S&B, S&B should be paid before any funds were disbursed to any members of the company.

The trial court granted the motion to substitute counsel and also granted the charging lien, explaining as follows:

> The Court pursuant to [*George v Sandor M Gelman, PC*, 201 Mich App 474; 506 NW2d 583 (1993)] is going to grant the attorney a charging lien. . . .
>
> The Court does believe that [Donnie Ray's counsel] is correct that that amount should come from any portion of any profits ultimately from Bear and Ferguson and not just off the top from the general corporate profits.

The trial court clarified that it was setting a specific amount for the lien of "[$]55,295.40 and if there's a challenge to that number we'll have an evidentiary hearing, but that's the number until such time as we have a hearing." The court acknowledged receipt of S&B's proofs, noting that S&B "attached the hours," and the "hourly rate" did not "shock the conscience, [and] there are some costs and such and the 55 is the number."

Appellee S&B had already prepared a proposed order and asserted that it needed only to add some language regarding how the fees would be assessed among the members of Moss Company. The trial court agreed, stating, "Yeah, the Court doesn't have a problem with [the proposed order], so long as that other language is finessed in there and given an opportunity for [Donnie Ray's counsel] and [Schulman] to review it."

> On March 4, 2022 appellee S&B submitted a proposed order providing as follows:
>
> The Court finds as follows:
>
> 1. Moss Company, LLC, Robert Bear, and Daniel Ferguson III have requested that Schenk & Bruetsch PLC withdraw from its representation of them in this matter because it is more economical for them to hire a new attorney than to pay S&B's invoices.
>
> 2. S&B's termination was without cause.
>
> 3. Through S&B's efforts, Moss Company regained control of its "most important asset"—its vendor profile within the City of Detroit's Oracle vendor/supplier portal. This allowed Moss Company to begin performing its contracts with the City and receive payment.
>
> 4. Moss Company, LLC owes S&B $55,295.40 in legal fees and expenses.
>
> 5. S&B is entitled to an attorney's charging lien against any funds that Moss Company, LLC receives, or is set to receive, from the City of Detroit.
>
> In light of the above factual findings,

-4-

IT IS ORDERED that Sanford Schulman is substituted in as counsel in place of Schenk & Bruetsch, PLC . . . .

IT IS FURTHER ORDERED that Schenk & Bruetsch PLC is entitled to an attorney's charging lien of $55,295.40 against any funds possessed by or owed to Moss Company, LLC from the City of Detroit. No money shall be disbursed to Moss Company or from Moss Company's accounts without first satisfying this charging lien.

IT IS FURTHER ORDERED that the allocation of Schenk & Bruetsch PLC's fees, as between the members of Moss Company, shall be determined by the Court as stated on the record.

Appellants filed objections to entry of the order, alleging that the trial court never made the factual findings thus recited, that the court lacked authority to enforce a charging lien against nonparty Detroit, and that the order failed to include a provision allowing appellants to demand an evidentiary hearing challenging the amount of the lien, as the trial court had stated at the hearing. Appellants provided their own proposed order which granted substitution of counsel, stated that appellee would retain a lien on any recovery in the lawsuit in favor of Moss Company, and that appellants could object to the reasonableness of the fees and costs, and request an evidentiary hearing. Appellee S&B responded that the trial court already approved S&B's proposed order during the March 3, 2022 hearing, and thus that it should be entered.

Donnie Ray also filed objections, adopting appellants' objections and adding that the proposed order failed to include language reflecting the trial court's earlier oral statement that the lien should be paid "from any portion of any profits ultimately from Bear and Ferguson, and not just off the top from the general corporate profits."

At the hearing on the objections held on March 24, 2022, the trial court told S&B that "it looks like there's a few things that have been slid into this order that I don't know that we really talked about or, I mean I didn't make a finding, I don't know." S&B maintained that "every issue that is in that proposed order was addressed in the briefing, and the Court approved the exact proposed order" at the hearing on March 3, 2022. Appellee S&B also asserted that the findings of fact in the proposed order were consistent with the trial court's rulings and the evidence presented. Appellants argued the trial court actually "made no findings except a substitution [of counsel], a lien, and the preservation" of appellants' interest. Ultimately, the trial court stated, "[w]ell the Court's had an opportunity to review the motion, the original motion, the objection thereto, the order, and the Court is going to enter the order as proposed by [S&B]."

The next day, the trial court entered S&B's proposed order as it was submitted. This appeal followed.

## II. ANALYSIS

Appellants first argue that the trial court erred in imposing the charging lien because Detroit was a third-party vendor, not a party to the case, and the court had no operational jurisdiction to impose a charging lien over funds that may be earned from a nonparty. We agree.

This Court reviews a trial court's decision to impose an attorney charging lien for an abuse of discretion. *Polen v Melonakos*, 222 Mich App 20, 24; 564 NW2d 467 (1997). An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes. *Nahshal v Fremont Ins Co*, 324 Mich App 696, 710; 922 NW2d 662 (2018) (citation omitted).

A special, or charging, lien is "an equitable right to have the fees and costs due for services secured out of the judgment or recovery in a particular suit." *George v Sandor M Gelman, PC*, 201 Mich App 474, 476; 506 NW2d 583 (1993). It "creates a lien on a judgment, settlement, or other money recovered as a result of the attorney's services." *Id*. Such "liens automatically attach to funds or a money judgment recovered through the attorney's services." *Id*. at 477-478. "The ability to enforce an attorney's charging lien is ancillary to a trial court's exercise of jurisdiction over the cases before it." *Souden v Souden*, 303 Mich App 406, 412; 844 NW2d 151 (2013).

Appellee S&B asserts that the charging lien at issue was proper because S&B's litigation efforts directly resulted in the recovery of login and password information that Moss Company needed to gain access to Detroit's vendor profile in order to perform work for, and receive payment from, Detroit. Because S&B's litigation services directly resulted in Moss Company's receiving payments from Detroit, S&B argues that the charging lien over such proceeds was appropriate. S&B also maintains that Detroit was not merely an unrelated third-party vendor, but was seriously involved in the facts underlying this case because its vendor portal was Moss Company's most important asset.

Appellee S&B's arguments are not persuasive. The trial court imposed the charging lien against "any funds possessed by or owed to" Moss Company from Detroit. Such an order would be appropriate if this were a contract dispute between Moss Company and Detroit, and if S&B's services resulted in a money judgment against Detroit. But that is not the situation here. As noted, a charging lien attaches to "a judgment, settlement, or other money recovered as a result of the attorney's services." *George*, 201 Mich App 476. No such money was recovered here. S&B's litigation services resulted in orders directing the return of login and password information needed for Moss Company to access Detroit's vendor portal and continue its demolition work for that customer. This "recovery" of Moss Company's mechanism through which it collects money from its demolition contracts with Detroit does not qualify as "other money recovered" for the purposes of a charging lien. While Moss Company undoubtedly needed the login and password information to resume its demolition work, the funds Moss Company derives from Detroit are actually earned through its demolition work, not through gaining access to Detroit's vendor portal. Further, Detroit was not a party and Moss Company's demolition work for Detroit was not at issue in this case. Accordingly, imposing a charging lien against "any funds possessed by or owed to" Moss Company from Detroit was improper.

This Court considered a similar situation in *Dunn v Bennett*, 303 Mich App 767; 846 NW2d 75 (2013). In that case, a taxpayer engaged counsel in response to a tax lien the IRS imposed on the taxpayer's real property. *Id*. at 769-770. After two years of litigation, the attorney reached a settlement with the IRS under which the property was sold. *Id*. at 769. The IRS was paid out of the proceeds of the sale, with the taxpayer retaining the excess proceeds from the sale. *Id*. When the attorney was not satisfied with the compensation the taxpayer paid for his legal services, the attorney sought a charging lien over the proceeds that the taxpayer received from the sale of the

property. *Id*. at 770, 778. This Court noted that a charging lien generally attaches to the judgment or recovery in a particular suit. And with regard to the client's proceeds from the sale of the property, this Court stated, "We do not view this as a 'recovery' to which a charging lien may be attached." *Id*. at 778. Although this Court did not elaborate, if the client's share of proceeds from the sale of real property in *Dunn* were too far attenuated from the "recovery" in that case, it follows that the proceeds earned by Moss Company through its current or future demolition work for Detroit are also too far attenuated to be deemed a "recovery" here.

For these reasons, we conclude that the trial court abused its discretion by imposing a charging lien that attached to "any funds possessed by or owed to" Moss Company from Detroit. It was unreasonable to attach an attorney charging lien on funds that were not part of any money judgment, settlement, or any "other money" actually recovered by S&B's work, and that were so far removed from litigation in which Detroit was not a party, and Moss Company's demolition work for Detroit was not an issue.

Appellants next argue that the trial court erred in issuing an order containing findings of fact that were made without discussion or proofs of any kind. Appellants additionally object that the trial court's order failed to include a provision allowing appellants to challenge the lien amount and request an evidentiary hearing, on the ground that those omissions were contrary to the trial court's oral ruling on March 3, 2022. We find these arguments unpersuasive.

"Findings of fact by the trial court may not be set aside unless clearly erroneous. In the application of this principle, regard shall be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." MCR 2.613(C). "A finding is clearly erroneous when this Court is left with a definite and firm conviction that a mistake has been made." *Johnson Family Ltd Partnership v White Pine Wireless, LLC*, 281 Mich App 364, 387; 761 NW2d 353 (2008). This Court reviews for an abuse of discretion a trial court's decision on whether to conduct an evidentiary hearing to determine the reasonableness of attorney fees. *Kernen v Homestead Dev Co*, 252 Mich App 689, 691; 653 NW2d 634 (2002). If there is a sufficient record to review the issue, an evidentiary hearing is not required. *Id*.

As noted, the order at issue recited that appellants terminated their relationship with appellee S&B only because it was more economical for appellants to hire new counsel, and that S&B's litigation efforts resulted in Moss Company's regaining access to Detroit's vendor portal, which was Moss Company's most important asset. Appellants emphasize that at the March 24, 2022 hearing on objections to S&B's proposed order, the trial court commented, "a few things have been slid into this order that I don't know that we really talked about or, I mean I didn't make a finding, I don't know;" and then the next day the trial court entered the order exactly as it was proposed by S&B. However, despite the trial court's comment, each of the trial court's findings of fact was discussed and argued in the briefs and orally at two hearings, and S&B offered documentation in support of the amount it requested. The trial court's findings of fact were thus based on sufficient evidence presented on the record, and so were not clearly erroneous.

Next, appellants argue that the amount of the attorney lien should have been determined through "an evidentiary hearing, with testimony, exhibits, and the safe guards of due process," and thus the trial court abused its discretion by failing to include a provision in the order allowing appellants to challenge the amount of the lien through an evidentiary hearing.

As noted, at the March 3, 2022 hearing, the trial court set the specific amount for the lien at $55,295.40, then added, "if there's a challenge to that number we'll have an evidentiary hearing, but that's the number until such time as we have a hearing." And the court acknowledged receipt of S&B's proofs as to the amount while opining that the "hourly rate" did not "shock the conscience, then stated that, in the event of a challenge, there would be an evidentiary hearing. Schulman responded, "I'll discuss it with [appellants] about the figure, I haven't really, I just got their numbers the day before." As S&B points out, weeks passed, and neither appellants nor their counsel ever requested an evidentiary hearing, or otherwise challenged the lien amount, and never offered any evidence to rebut S&B's proofs in that regard. The trial court stated that it had taken advantage of the "opportunity to review" the proposed order, the objections, and the motions, before it entered its order. "[A] court speaks through its written orders and judgments, not through its oral pronouncements." *In re Contempt of Henry*, 282 Mich App 656, 678; 765 NW2d 44 (2009). Thus, to the extent that the trial court's oral statement regarding appellants' prerogative to challenge the amount of the lien in an evidentiary hearing varied from the written order, the latter controls. See *Cassidy v Cassidy*, 318 Mich App 463, 509; 899 NW2d 65 (2017).

In summary, we conclude that the trial court's findings of fact were not clearly erroneous, but were instead based on the evidence presented. Further, because appellants had sufficient time to challenge the lien amount, present their own evidence, and request an evidentiary hearing, but never did, and because the trial court had a reasonable basis for calculating the amount, we conclude that the trial court did not abuse its discretion by declining to include a provision in the order expressly allowing appellants to challenge the lien amount. However, because the trial court erred by granting S&B a charging lien that attached to funds that nonparty Detroit possessed or owed to Moss Company, we vacate that facet of the order and remand this case with instructions to the trial court to issue an amended order granting a charging lien that attaches only to the proceeds of any actual recovery from the pending case between appellants and Donnie Ray.

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Jane E. Markey
/s/ Stephen L. Borrello