*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

UNEEKA GREEN RILEY, Personal Representative of the ESTATE OF TA,

       Plaintiff,

v

HURLEY MEDICAL CENTER,

       Defendant,

and

FIEGER, FIEGER, KENNEY AND
HERRINGTON, PC,

       Appellant/Cross-Appellee,

and

LAW OFFICES OF COURTNEY MORGAN,
PLLC,

       Appellee/Cross-Appellant.

UNPUBLISHED
August 22, 2024

No. 365282
Genesee Circuit Court
LC No. 2020-114830-NH

Before: MALDONADO, P.J., and M. J. KELLY and RICK, JJ.

PER CURIAM.

       Fieger, Fieger, Kenney, and Herrington, PC (Fieger firm), appeals as of right the trial court's order dividing a contingency fee by granting 55% of the fee to Fieger firm and 45% of the fee to Law Offices of Courtney Morgan, PLLC (Morgan firm). Fieger firm argues that the trial court improperly divided the contingency fee according to a proportionate-percentage method

-1-

rather than the lodestar method[1] and that the evidence did not support the trial court's division of the award. On cross appeal, Morgan firm argues that the trial court should have held an evidentiary hearing and allowed discovery on the issue of possible misconduct by Fieger firm. For the reasons stated in this opinion, we affirm in part, reverse in part, and remand for discovery and, if necessary, an evidentiary hearing.

## I. BASIC FACTS

Plaintiff, Uneeka Green Riley, retained Morgan firm to represent her on behalf of her minor daughter in a medical malpractice action against defendant, Hurley Medical Center. The case was assigned to Ronald S. Bowling, who appears to be the only Morgan firm lawyer to work on plaintiff's case. Bowling sent Hurley Medical Center a notice of intent to file the lawsuit in accordance with MCL 600.2912b. One hundred eighty-two days later, Bowling filed the complaint with the accompanying affidavits of merit in accordance with MCL 600.2912b(1) and MCL 600.2912d.

In 2021, after working on plaintiff's case for approximately 27 months while employed at the Morgan firm, Bowling resigned his employment and accepted employment at Fieger firm. In correspondence dated April 16, 2021, Bowling informed plaintiff that he was leaving Morgan firm on May 7, 2021, to join the Fieger firm. He stated that she had the choice of continuing to retain Bowling, accepting representation by another lawyer of the Morgan firm, or choosing a third, unrelated lawyer. He requested her reply by mail or e-mail notification at his comcast.net e-mail address. Plaintiff responded by checking the option stating, "I wish Ronald S. Bowling to continue to represent me," and signed her name. Bowling submitted his resignation notice to Courtney Morgan in an e-mail dated May 21, 2021.

Morgan and Bowling executed a stipulated order providing that Morgan firm "shall have a lien upon any judgment or settlement achieved in this case." The lien "shall include case costs incurred on or before May 21, 2021, and reasonable attorney's fees." Fieger firm moved for a determination of the amount of Morgan firm's attorney lien before the case was resolved. It stated that Morgan firm was entitled to compensation for the reasonable value of its services on the basis of quantum merit using the lodestar method. The trial court denied the motion as premature.

Later, Fieger firm brought a renewed motion to determine the attorney's lien based upon the lodestar method. Morgan firm responded that it was entitled to 66% of the contingency fee because it performed the most valuable services by retaining the case and initiating the lawsuit. Morgan firm also argued that Bowling and Fieger firm committed misconduct by soliciting plaintiff while she was represented by Morgan firm. Fieger firm denied any misconduct and argued that the lodestar method was the only permissible method for dividing the fee. The trial court concluded that the proportionate-percentage method was appropriate and granted Morgan firm 45% of the fee. The trial court stated that Morgan firm performed the valuable "front load" work in accepting plaintiff as a client, and filing the complaint and affidavits of merit. Although

---

[1] "Determining a reasonable attorney fee by multiplying the reasonable number of hours expended on the case with a reasonable hourly rate is known as the 'lodestar method.' " *Burton v State*, 340 Mich App 633, 638 n 4; 987 NW2d 879 (2022).

the court did not allow discovery on Morgan firm's allegations of misconduct and no evidentiary hearing was held, the court determined that Bowling's conduct did not "cross" into the area of misconduct even though "the letter written by Mr. Bowling and the timing of it certainly sneaks right up to the line of [MRPC] 7.1 and 7.3."

Fieger firm moved for reconsideration, arguing that the trial court erred by finding that the "front load" work was of comparable or near-comparable value to the services Fieger firm performed in conducting discovery, deposing experts, and negotiating a settlement. Fieger firm also argued that the trial court failed to give due weight to what they called the "Fieger factor" created by Geoffrey Fieger's reputation as a litigator, which it contended was a significant factor in obtaining the settlement. The trial court denied the motion.

## II. METHOD OF DETERMINING REASONABLE ATTORNEY FEES

### A. STANDARD OF REVIEW

Fieger firm argues that the lodestar method was the only proper approach to dividing the attorney fee in this case. The amount awarded as reasonable attorney fees is reviewed for abuse of discretion. *McNeel v Farm Bureau Gen Ins Co of Mich*, 289 Mich App 76, 97; 795 NW2d 205 (2010). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 274; 884 NW2d 257 (2016). Legal questions are reviewed de novo. *Holmes v Holmes*, 281 Mich App 575, 587; 760 NW2d 300 (2008).

### B. ANALYSIS

The law imposes an attorney's lien upon the judgment or funds resulting from the attorney's services. *Reynolds v Polen*, 222 Mich App 20, 23; 564 NW2d 467 (1997). An attorney charging lien is "an equitable right to have the fees and costs due for services secured out of the judgment or recovery in a particular suit." *Souden v Souden*, 303 Mich App 406, 411; 844 NW2d 151 (2013) (quotation marks and citation omitted). "MCR 8.121 provides that if an attorney enters into a contingency fee agreement, the receipt, retention, or sharing of the compensation which is equal to or less than one-third the net amount recovered is deemed fair and reasonable." *Morris v City of Detroit*, 189 Mich App 271, 278; 472 NMW2d 43 (1991). Thus, a discharged law firm may receive a portion of a contingency fee earned as the result of the successor law firm obtaining a settlement or judgment on behalf of its client. See *Reynolds*, 222 Mich App at 30-31 (reversing the trial court order denying a portion of the contingency fee agreement to the discharged law firm and remanding for the trial court to "determine the percentage of the one-third fee that represents [the discharged law firm's] overall contribution to the settlement.").

At issue in this case is whether the trial court erred by dividing the contingency fee using a proportional-percentage method as opposed to using the lodestar method. Caselaw reflects that "quantum meruit is generally determined by simply multiplying the number of hours worked by a reasonable hourly fee." *Reynolds*, 222 Mich App at 28. However, that is only one permissible method of dividing a contingency fee between a discharged law firm and the successor law firm.

Indeed, despite recognizing the lodestar approach as being generally applicable to determine the quantum meruit award of an attorney fee, the *Reynolds* Court remanded to the trial

court to follow *Morris*, 189 Mich App 271 and "determine *the percentage* of the one-third fee that represents [the discharged law firm's] overall contribution to the settlement." *Reynolds*, 222 Mich App at 30-31 (emphasis added). In *Morris*, this Court vacated the trial court order awarding the successor lawyer the entire one-third contingency fee and remanded for the court to enter an order awarding the discharged lawyer a percentage of the contingency fee equal to the percentage of services completed by that lawyer. *Morris*, 189 Mich App at 279-280.

The *Morris* Court explained that "there is no precise formula for assessing the reasonableness of an attorney's fee." *Id*. at 278. However, it recognized that the following "nonexclusive factors" may be considered when making such a determination:

> (1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client. [*Id*. at 278-279 (quotation marks and citation omitted).]

Additional factors include whether the original fee agreement was on a contingency basis because that determination "would allow the court to consider the degree of risk undertaken by an attorney who was prematurely discharged." *Id*. at 279. The *Morris* Court upheld the trial court's finding that the discharged lawyer performed 99.44 percent of the services contemplated by the contingency fee agreement and that, as a result, he was entitled to 99.44 percent of the one-third fee using the proportional-percentage method. *Id*. at 280. In *Reynolds*, this Court concluded that the use of the proportional-percentage approach to quantum meruit as set forth in *Morris* "compensates an attorney for completed work on the basis of evaluating as closely as possible the actual deal struck between the client and the attorney rather than an assessment of reasonable compensation in the abstract." *Reynolds*, 222 Mich App at 30. In doing so, the *Reynolds* Court noted that the trial court "is in the best position to assess an attorney's contribution to a case" because trial courts are aware of the variable factors, such as "the strengths and weaknesses of cases before them, the time and effort expended by the attorneys, and changes in the parties' leverage resulting from changes in counsel." *Id*. at 30. As noted above, the *Reynolds* Court employed the proportional-percentage approach as opposed to the lodestar approach. *Id*. at 31.

Fieger firm contends that the use of the proportional-percentage method should be limited to cases like *Morris*, 189 Mich App at 280, where the discharged law firm performed 99.44 percent of the work, but that the lodestar method should be used where the successor law firm performed a "significant amount of the work" after the first lawyer was discharged. In support, Fieger firm directs this Court to *Johnson v Mich Dep't of Corrections*, unpublished per curiam opinion of the Court of Appeals, issued April 16, 2019 (Docket No. 341436). Unpublished opinions are not binding precedent, but they may be considered persuasive. *Micheli v Mich Auto Ins Placement Facility*, 340 Mich App 360, 370, 986 N.W.2d 451 (2022). The *Johnson* Court concluded that it was "appropriate" for the trial court to choose the lodestar method. The trial court determined that *Morris* and *Reynolds* did not control because the lawyer "had performed a significant amount of work after the case went with him to his new firm (indeed, the record suggests that the lion's share of the work on this matter occurred after [the lawyer] changed employment)." *Id*. unpub op at 4. Fieger firm contends that, like the lawyer in *Johnson*, Bowling performed the "vast majority" of the work while he was employed by Fieger Law. That matter, however, was disputed. And the

work that Bowling performed while he was employed by Morgan firm was crucial to the successful resolution of the case given the time-constraints imposed in medical-malpractice cases. *Johnson*, therefore, stands only for the proposition that a trial court, depending upon the circumstances of the case, has discretion to use either the lodestar method or the proportional-percentage method when dividing a contingency fee.

Finally, Fieger firm argues that use of the proportional-percentage method is contrary to public policy. Fieger firm first raised this issue below in its motion for reconsideration, but issues raised in that manner are not properly preserved for appellate review. *In re Schroeder Estate*, 335 Mich App 107, 119; 966 NW2d 209 (2020). Michigan generally recognizes the "raise or waive" rule of appellate review, in which a party's failure to raise an issue in the trial court waives review of the issue on appeal. *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008). This Court may address an unpreserved issue if failure to address it would cause manifest injustice, or if consideration of the issue is necessary to the proper determination of the case, or if the issue presents a question of law and the facts necessary for resolution are on the record. *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 359090); slip op at 6. In this case, we overlook the preservation requirement because this issue presents a question of law and the facts necessary for its resolution are available in the existing record. See *id.*

A client "has an absolute right to discharge an attorney and is therefore not liable under the contract for exercising that right." *Reynolds*, 222 Mich App at 25. Fieger firm argues that the proportional division of an attorney fee, in which the discharged attorney receives a percentage of the contingency fee, would impair the client's right to discharge an attorney because such a fee division would disincentivize substitute counsel from accepting a case. However, as indicated in Part II of this opinion, Michigan caselaw has approved proportional divisions of contingency fees between different firms who represented the plaintiff in different phases of the proceedings. Michigan has not initiated a public policy of restricting a discharged law firm's entitlement to fees on the ground that the restriction is necessary to protect a client's right to discharge counsel and select new counsel. Michigan's policy allows the trial court discretion and a range of options to balance a client's right to choose and discharge counsel, and both counsels' right to compensation. Fieger firm's argument, therefore, is without merit.

In sum, *Morris* and *Reynolds* provide that, when dividing a contingency fee, a trial court is not limited to using the lodestar method and may instead use the proportional-percentage method to determine a quantum meruit award for a discharged law firm. *Morris*, 189 Mich App at 280; *Reynolds*, 222 Mich App at 30-31. The use of the proportional-percentage method, which is supported by binding caselaw is not violative of Michigan public policy. Accordingly, reversal is not warranted based upon the trial court's decision to use the proportional-percentage method rather than the lodestar method.

## III. EVIDENTIARY SUPPORT FOR TRIAL COURT'S 45%-55% DIVISION

### A. STANDARD OF REVIEW

Next, Fieger firm argues that if the proportional-percentage method is permissible, the trial court's 45%-55% division is not supported by the evidence. A trial court's findings of fact

pertaining to a discharged attorney's petition for attorney fees are reviewed for clear error. *Morris*, 189 Mich App at 278. "A finding is clearly erroneous when, although evidence supports it, this Court is left with a firm conviction that the trial court made a mistake." *Featherston v Steinhoff*, 226 Mich App 584, 588; 575 NW2d 6 (1997).

## B. ANALYSIS

As explained above, the trial court may consider the following nonexclusive factors the trial court may consider in determining an attorney fee award under quantum meruit principles:

> (1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client. *[Morris*, 189 Mich App at 278-279 (quotation marks and citation omitted).]

Additionally, the court may consider the reasons that the plaintiff changed lawyers and determine which party should bear the costs of duplicated work. *Reynolds*, 222 Mich App at 30. The trial court "may also properly consider that the attorney originally agreed to render services on a contingency basis," which "would allow the court to consider the degree of risk undertaken by an attorney who was prematurely discharged." *Id*. at 29 (quotation marks and citation omitted).

In its renewed motion to determine the amount of the lien, Fieger firm characterized Morgan firm's period of representation as "the initial stage of a medical malpractice case," when "there is not much legal work to be performed." Fieger firm remarked that this is "a time for requesting medical records, sometimes waiting for months for the same to appear." In contrast, Fieger firm conducted 25 depositions, all other discovery, all motions, and facilitation and settlement discussions. In response, Morgan firm asserted that its achievements in retaining a new and valuable client and in assuming the risks of initiating the case were the most important contributions, "irrespective of the work performed thereafter." Morgan firm relied substantially on Fieger firm's alleged misconduct in soliciting Green to discharge Morgan firm and on insinuations that Fieger firm's opposition to a proportionate distribution was unprincipled opportunism.

The trial court applied the six enumerated factors identified in *Morris*, 189 Mich App at 278-279 and restated in *Reynolds*, 222 Mich App at 29. The trial court found that "professional standing and experience of the attorney," was "a wash" because both firms are long-standing and well-known. The court also found that the attorneys were approximately equal in regard to skill, time, and labor. The court remarked that the amount involved "is a significant amount." The settlement was a substantial benefit to the client. Regarding difficulty of the case, the court remarked that it was a complex medical malpractice case, in which both law firms demonstrated skill. Fieger firm "demonstrated skill in retaining additional experts and conducting depositions leading up to" the settlement, while Morgan firm "demonstrated skill with regard to the intake of the case, assessment of the matter." The court further stated:

> [A]s has been pointed out by other cases in the past, a lot of that work if [sic] front loaded with regard to cases of this type where an analysis needs to be made and

the—for lack of a better term second attorney on the case does enjoy the benefit of that analysis and as Mr. Morgan pointed out, his notice of intent and his complaint does serve as the basis of the settlement that was approved by the Court earlier this morning.

The trial court agreed with Morgan firm about the work being "front loaded," but it disagreed with its proposed distribution of the contingency fee, with Morgan firm receiving 66 percent of the one-third fee. The trial court instead opted to split the fee 55% and 45%, in Fieger firm's favor.

Thus, the trial court essentially found that Morgan firm and Fieger firm were equal with respect to skill and reputation, and nearly equal with respect to the value they contributed to the settlement. The trial court weighed Morgan firm's contribution of initiating the lawsuit and preparing the notices of intent, the complaint, and the affidavits of merit against Fieger firm's contribution of managing the case through the discovery and negotiation of settlement phases, with the Fieger firm's contributions outweighing the Morgan firm's contribution by 10%.

Fieger firm argues that the trial court did not consider the value of the respective firms' services. In its renewed motion to determine the lien, Fieger firm made conclusory assertions that its work in taking 25 depositions and representing plaintiff in settlement negotiations was the key contribution that resulted in a favorable outcome. Morgan firm responded with conclusory statements regarding the importance of the "front-loaded" tasks of investigating a potential claim and retaining a potential client. Neither party made specific factual arguments regarding the comparative value of these contributions, such as addressing how a theory of liability evolved over the course of proceedings. Fieger firm did not request an evidentiary hearing, and Morgan advised the trial court that he believed the evidence was sufficient to justify his firm receiving 66 percent of the one-third fee.

Given this record, the trial court's finding that Morgan firm's early work on the case justified awarding it almost half of the contingency fee was not supported by evidence. The trial court's finding that Fieger firm benefited from Morgan firm's "front loaded" work and that Morgan firm's work formed the basis of the settlement did not cite any facts related to the specific case before it. The trial court erred by basing the division of the fee on general assumptions about the importance of the work to initiate a medical malpractice action rather than on the specific course of this particular action. Neither party's evidence was sufficient to determine the appropriate allocation of the contingency fee. We therefore remand this case to the trial court for proper consideration of the comparative value of the firms' contributions to the settlement, based upon the parties' submissions and, if the trial court deems it appropriate, an evidentiary hearing.[2]

---

[2] Given our determination that an evidentiary hearing is necessary, we decline to address Fieger firm's unpreserved argument regarding the effect of the so-called "Fieger factor," which it contends resulted in a higher settlement amount. The question of whether and to what extent an individual lawyer's reputation influenced a settlement is a fact-based inquiry that cannot be resolved without an evidentiary record. The matter, therefore, is best left for the trial court to resolve on remand.

## IV. CROSS-APPEAL

On cross appeal, Morgan firm argues that Bowling violated MRPC 4.2 and MRPC 7.3 when he sent the plaintiff a letter on April 16, 2021, advising her that he was leaving Morgan firm on May 7, 2021, so that he could join Fieger law and directing her to inform him whether she desired to (1) continue to have him represent her, (2) have a different Morgan firm lawyer represent her, or (3) choose a lawyer unrelated to him, Morgan firm, or Fieger firm.

MRPC 4.2, Communication With a Person Represented by Counsel, provides in relevant part:

> (a) In representing a client, a lawyer shall not communicate about the subject of the representation with a person whom the lawyer knows to be represented in the matter by another lawyer, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

MRPC 7.3, Solicitation, provides:

> (a) A lawyer shall not solicit professional employment from a person with whom the lawyer has no family or prior professional relationship when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain. The term "solicit" includes contact in person, by telephone or telegraph, by letter or other writing, or by other communication directed to a specific recipient, but does not include letters addressed or advertising circulars distributed generally to persons not known to need legal services of the kind provided by the lawyer in a particular matter, but who are so situated that they might in general find such services useful, nor does the term "solicit" include "sending truthful and nondeceptive letters to potential clients known to face particular legal problems" as elucidated in *Shapero v Kentucky Bar Ass'n*, 486 US 466, 468; 108 S Ct 1916; 100 L Ed 2d 475 (1988).

> (b) A lawyer shall not solicit professional employment from a person by written or recorded communication or by in-person or telephone contact even when not otherwise prohibited by paragraph (a), if:

> (1) the person has made known to the lawyer a desire not to be solicited by the lawyer; or

> (2) the solicitation involves coercion, duress or harassment.

Nothing in the face of Bowling's letter to plaintiff violated Rule 7.3. He explained that plaintiff had the choice to follow him to Fieger firm, remain with Morgan firm, or choose a different lawyer and firm. He did not disparage Morgan firm.

Nevertheless, Morgan firm argues that Fieger firm violated MRPC 4.2(a) by communicating with plaintiff, a person whom Fieger firm knew to be represented by a lawyer, because Bowling had already accepted employment with Fieger firm and was therefore contacting plaintiff as Fieger's agent. It also argues that Fieger firm violated MRPC 7.3(a) by soliciting employment from plaintiff despite having no prior relationship with her. Again, Morgan firm

imputes Bowling's conduct to Fieger firm on the theory that Bowling's acceptance of employment from Fieger firm rendered him an agent. Morgan firm has no hard evidence that Bowling had any agreement or understanding with Fieger firm to solicit his Morgan firm clients. However, the timing of Bowling's letter, and his failure to inform Morgan firm of his plans before he contacted clients, create a suspicion of collusion.

Although Morgan firm raises suspicions that Bowling and Fieger firm may have engaged in misconduct in order to solicit plaintiff to follow Bowling to Fieger firm, the record is not sufficient to prove or disprove Morgan firm's suggestions of collusion. The trial court found that Bowling's letter to plaintiff pressed the boundaries of MRPC 7.3, but the court did not address the possibility of collusion. The present record is not sufficient to determine if misconduct occurred. We therefore remand to the trial court for further findings of fact, including discovery and an evidentiary hearing if appropriate.[3]

## V. CONCLUSION

We conclude in Fieger firm's appeal that the trial court erred by granting Morgan firm a 45% share of the attorney fee because the evidence was not sufficient to support this division. We conclude that Morgan firm established a suspicion of improper solicitation in its cross appeal.

In both of these matters, we remand to the trial court for further findings and an evidentiary hearing if the trial court deems it appropriate. The parties also should be allowed to conduct discovery.

Reversed and remanded for further proceedings consistent with this opinion. Neither party having prevailed in full, no taxable costs are awarded. MCR 7.219(A). We do not retain jurisdiction.

/s/ Allie Greenleaf Maldonado
/s/ Michael J. Kelly
/s/ Michelle M. Rick

---

[3] Fieger firm argues that Morgan firm forfeited its right to request an evidentiary hearing and discovery because it declined the opportunity when the trial court inquired about it. The record reflects that Morgan firm requested 66% of the one-third fee. In connection, with that request, Morgan stated, "If this Court wishes to hold an evidentiary hearing, [Morgan firm] asks that this court permit discovery in advance of the evidentiary hearing on both the issue of the improper solicitation of Lienholder clients and also the extent of the work performed on the file by the respective firms." At a subsequent hearing, the trial court reminded Morgan that he requested an evidentiary hearing and discovery. Morgan replied that there was sufficient evidence to support his request for 66% of the one-third fee. He stated: "You can award on the record you have today the 66 percent. If the Court wishes to engage in that further perhaps the percentages will change depending on what we find out about what was being done here by the Fieger firm." Thus, in context, it is clear that he was not withdrawing his request for an evidentiary hearing. Rather, he was leaving it to the discretion of the trial court. The matter, therefore, was not forfeited.