*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SARAH COLEGROVE, Special Fiduciary for the
ESTATE OF JOANNA L. HUBBARD,

       Plaintiff-Appellee,

v

OAKWOOD HEALTHCARE INC., and BELAL F.
ABDALLAH, M.D.,

       Defendants,

and

ANDREW MOXIE,

       Appellant,

and

JOHN HUBBARD and JULIE HUBBARD,

       Intervening Parties-Appellees.

UNPUBLISHED
November 9, 2023

No. 357997
Wayne Circuit Court
LC No. 16-011622-NO

SARAH COLEGROVE, Special Fiduciary for the
ESTATE OF JOANNA L. HUBBARD,

       Plaintiff-Appellee,

v

OAKWOOD HEALTHCARE, INC., and BELAL F.
ABDALLAH, M.D.,

       Defendants,

No. 359571
Wayne Circuit Court
LC No. 16-011622-NO

and

ANDREW MOXIE and SARA K.
MACWILLIAMS,

          Appellants,

and

JOHN HUBBARD and JULIE HUBBARD,

          Intervening Parties-Appellees.

---

Before:  CAVANAGH, P.J., and RIORDAN and PATEL, JJ.

PER CURIAM.

In Docket No. 357997, interested-party, Andrew Moxie, appeals as of right the trial court's order, entered by visiting Wayne Circuit Court Judge William J. Giovan, dismissing his claim for attorney fees for legal services he provided on behalf of the Estate of Joanna L. Hubbard ("the estate") in a circuit court action against defendants Oakwood Healthcare, Inc., and Dr. Belal F. Abdallah, M.D.  In Docket No. 359571, Moxie and his attorney, Sara K. MacWilliams, appeal as of right the trial court's postjudgment order awarding intervening parties John and Julie Hubbard sanctions against Andrew Moxie in the amount of $50,350.25, and holding that MacWilliams was jointly liable with Moxie for $42,100.25 of that amount.  For the reasons set forth in this opinion, we reverse the dismissal of Moxie's claim for attorney fees, vacate the trial court's judgment of sanctions, and remand to that court for further proceedings.

## I.  BACKGROUND

These appeals arise from a dispute regarding Moxie's entitlement to attorney fees from the estate of Joanna L. Hubbard.  After Joanna's husband, John J. Hubbard, passed away, Joanna filed a lawsuit against Oakwood Healthcare and Dr. Abdallah in 2016, challenging their failure to conduct an autopsy on John's body.  Joanna was originally represented by attorney B. A. Tyler, who subsequently withdrew as counsel.  In November 2017, Moxie, who is married to Joanna's daughter, Susan Hubbard, filed an appearance on Joanna's behalf.  Joanna died approximately a month later.  Joanna's son, John D. Hubbard, as personal representative of Joanna's estate, was later substituted as the plaintiff.  Tyler re-entered the case as an attorney for the estate, but Moxie also continued to provide legal services for the estate.  The parties dispute the nature of any agreement with Moxie to provide legal representation for the estate and whether there was any fee agreement.  Although Moxie claims that Tyler agreed to a reduced 25% contingency fee, and that he, Moxie, agreed to an 8% contingency fee, it is undisputed that neither Tyler nor Moxie entered into a written fee agreement with either Joanna or the personal representative of her estate.

In September 2019, following a jury trial, the trial court entered a judgment in favor of the estate against Oakwood, and awarded damages of $1,259,750, prejudgment interest of $117,210.54, taxable costs of $480, and case evaluation sanctions of $135,000, for a total judgment of $1,512,440.54. In November 2019, Moxie filed an attorney charging lien against the estate, claiming that he was entitled to recover his attorney fees against the judgment proceeds for his legal representation of Joanna and her estate. Following an evidentiary hearing in July 2020, the trial court determined that Moxie was not entitled to recover any contingency fee because a written fee agreement was never obtained, but found that he did provide legal services for the estate and was entitled to an award of attorney fees under a quantum meruit theory. The court ordered a continued evidentiary hearing "to determine the total fees and costs."

In August 2020, John D. Hubbard was removed as personal representative of Joanna's estate "due to the acrimony between the interested parties." The court appointed Sarah Colegrove as special fiduciary to "[t]ake possession and control of all Estate assets," and authorized her, in relevant part, "to terminate and or hire independent legal counsel" in the circuit court action and granted her "full power and authority to make any and all decisions, including settlement, which are in the best interests of the Estate including without limitation, the handling of any and all litigation that includes the pending claim of Andrew Moxie for attorney fees and costs pending in the Civil Lawsuit until completion."

After Moxie filed an amended motion for attorney fees, John D. Hubbard and his wife Julie (collectively "the Hubbards") were allowed to intervene. Moxie also filed a motion to disqualify the trial court, visiting Judge Giovan, which both Judge Giovan and the chief judge denied. The Hubbards subsequently filed a motion for summary disposition of Moxie's attorney-lien claim under MCR 2.116(C)(10), and also requested sanctions under MCR 1.109(E)(5) and MCL 600.2591(1). Colegrove, as special fiduciary for the estate, filed a concurrence with the Hubbards' motion. The trial court granted the Hubbards' motion for summary disposition, dismissed Moxie's claim for attorney fees, and also granted the Hubbards' request for sanctions. The court later entered a judgment for sanctions against Moxie in the amount of $50,350.25, and ordered that MacWilliams was jointly liable for $42,100.25 of the $50,350.25 total awarded against Moxie. The court declined to award sanctions to the estate.

## II. MOXIE'S CHARGING LIEN

Moxie first argues that the trial court erred by dismissing his claim for attorney fees under MCR 2.116(C)(10). We agree.

This Court reviews a trial court's decision on a motion for summary disposition de novo. *Dougherty v City of Detroit*, 340 Mich App 339, 345; 986 NW2d 467 (2021). The Hubbards moved for summary disposition under MCR 2.116(C)(10). In *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019), our Supreme Court explained:

> A motion under MCR 2.116(C)(10) . . . tests the *factual sufficiency* of a claim. *Johnson v VanderKooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. *Id.* A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of

-3-

material fact. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5; 890 NW2d 344 (2016). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Johnson*, 502 Mich at 761 (quotation marks, citation, and brackets omitted).

Additionally, the trial court's decision with respect to whether to impose an attorney's charging lien is reviewed for an abuse of discretion. *Reynolds v Polen*, 222 Mich App 20, 24; 564 NW2d 467 (1997). When the trial court's decision falls outside the range of reasonable and principled outcomes, it results in an abuse of discretion. *Reed-Pratt v Detroit City Clerk*, 339 Mich App 510, 516; 984 NW2d 794 (2021).

"An attorney-client relationship must be established by contract before an attorney is entitled to payment for services rendered." *Plunkett & Cooney, PC v Capitol Bancorp Ltd*, 212 Mich App 325, 329; 536 NW2d 886 (1995). Preliminarily, we agree that Moxie cannot establish a valid claim for a contingency fee because an agreement for a contingency fee must be in writing, MCR 8.121(F); MRPC 1.5(c), and Moxie does not dispute that he does not have a written fee agreement with either Joanna, the decedent, or with John Hubbard, who was the personal representative of Joanna's estate at the time Moxie provided his legal services.

Moxie further argues, however, that he is entitled to recover his attorney fees under a theory of quantum meruit. Although Moxie cites *Ambrose v Detroit Edison Co*, 65 Mich App 484; 237 NW2d 520 (1975), in support of this argument, that decision is not directly on point. In *Ambrose*, this Court held that "an attorney on a contingent fee arrangement who is wrongfully discharged, or who rightfully withdraws, is entitled to compensation for the reasonable value of his services based upon [q]uantum meruit, and not the contingent fee contract." *Id.* at 491. In *Reynolds*, 222 Mich App at 24, this Court similarly recognized that "[a] clear line of authority indicates that when a client wrongfully terminates an attorney or an attorney rightfully withdraws from a matter, recovery of attorney fees on a quantum meruit basis is appropriate." In *Reynolds*, *id.* at 24-25, this Court also cited *Plunkett & Cooney*, 212 Mich App at 330, for the proposition that recovery under a quantum meruit theory, rather than the contingency-fee contract, is permissible because a client has the right to discharge their counsel, and will not be held liable under the contract for exercising that right. However, this Court in *Reynolds* further concluded that there are some circumstances under which recovery under a quantum meruit theory is not appropriate, explaining:

> These cases indicate that quantum meruit recovery of attorney fees is barred when an attorney engages in misconduct that results in representation that falls below the standard required of an attorney (e.g., disciplinable misconduct under the Michigan Rules of Professional Conduct) or when such recovery would otherwise be contrary to public policy. [*Id.* at 26.]

This case is distinguishable from *Ambrose* in which, unlike here, the parties had a written contingency-fee agreement, and the issue involved the attorney's right to recover an attorney fee under a quantum meruit theory where the attorney was wrongfully discharged or rightfully withdrew. That decision does not address an attorney's right to recover an attorney fee under a quantum meruit theory where a written fee agreement does not exist. However, in *Meisner Law Group, PC v Weston Downs Condo Ass'n*, 321 Mich App 702, 726; 909 NW2d 890 (2017), this Court observed that for a party to be able to recover attorney fees under a quantum meruit theory,

there cannot be an express contract that addresses the same subject matter, and further recognized that "the law will imply a contract to prevent unjust enrichment only if the defendant has been unjustly or inequitably enriched at the plaintiff's expense." *Id*. (quotation marks and citation omitted). Therefore, under the authority of *Meisner Law Group*, Moxie would be able to recover under a quantum meruit theory, even without a written contingency-fee agreement.

Moxie presented invoices for services performed from November 9, 2017 to December 3, 2019. These services included, among other things, preparation of a motion for a protective order, preparation of interrogatories and requests for production of documents, and reviewing motions for summary disposition and preparing responses to the motions. Under a quantum meruit theory, the law will imply a contract "in order to prevent unjust enrichment when one party inequitably receives and retains a benefit from another." *Morris Pumps v Centerline Piping, Inc*, 273 Mich App 187, 194; 729 NW2d 898 (2006). On the basis of Moxie's invoices, there are genuine issues of material fact regarding whether Joanna, and thereafter the estate, were unjustly enriched by Moxie's provision of legal services without paying Moxie. Indeed, we note that after an evidentiary hearing in July 2020, the trial court reached a similar conclusion and ruled that Moxie was entitled to an award of attorney fees and costs under a quantum meruit theory. It was only after the Hubbards moved for summary disposition in April 2021 that the trial court changed its ruling and concluded that Moxie had engaged in misconduct that justified dismissal of his claim for attorney fees.

The trial court relied on *Maldonado v Ford Motor Co*, 476 Mich 372; 719 NW2d 809 (2006), to conclude that misconduct by Moxie required dismissal of his claim for attorney fees. In that case, our Supreme Court considered "the extent of a trial court's authority to govern the conduct of counsel and their clients in court proceedings," and reiterated that "trial courts possess the inherent authority to sanction litigants and their counsel, including the power to dismiss an action." *Id.* at 375-376. The Court explained that this power is "not governed so much by rule or statute, but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id*. at 376. The Court further explained a trial court's inherent authority to sanction litigants and their counsel, including the power to dismiss an action, is "rooted in a court's fundamental interest in safeguarding its own integrity and that of the judicial process." *Id*. at 389 (quotation marks and citation omitted).

In *Maldonado*, after the trial court ruled that certain evidence was inadmissible, the plaintiff and her counsel "engaged in a concerted and wide-ranging campaign in the weeks before various scheduled trial dates to publicize the details of the inadmissible evidence thorough the mass media and other available means," and then "continued to do so even after the trial court explicitly warned them both that such misconduct would result in the dismissal of plaintiff's lawsuit." *Id*. at 392. Recognizing the "gate-keeping obligation" of trial court to impose sanctions when misconduct arises, to deter the misconduct, and to serve as a deterrent to other litigants, our Supreme Court observed that the plaintiff's counsel flouted several rules of professional misconduct, and both individuals violated the trial court's clear directive. *Id*. at 392, 396.

Moxie asserts that *Maldonado* involved a series of deliberate acts by the plaintiff and her counsel to undermine and thwart the trial court's rulings, and that his actions in this case did not rise to the level of the "flagrant misbehavior" condemned in *Maldonado*. Moxie also argues that the trial court here did not consider whether a less drastic alternative sanction would have been

effective before the extremely drastic step of completely dismissing his claim for attorney fees. In relying on *Maldonado*, the trial court acknowledged that it had previously allowed Moxie's claim for attorney fees to proceed, unhindered, but stated that it did not have full knowledge at that time of the extent of Moxie's "illicit strategies" to recover attorney fees. The trial court referred to the motion to disqualify the trial court that Moxie had filed, which the court termed "terminally late and terminally groundless," and Moxie's appeal of the trial court's denial of that motion to the chief judge, in which Moxie added charges of actual prejudice against the trial court, which Moxie had not alleged in his original motion before the trial court. The trial court also found that Moxie filed a motion to strike the Hubbards' pleadings in which he misrepresented that the trial court "did not make any rulings" concerning the admissibility of communications in an e-mail from Susan Hubbard to Tyler, in which Susan stated that Moxie did not expect any attorney fees. The trial court found that it explicitly made two rulings regarding this issue, including that the communications were not subject to the attorney-client privilege, and that, even if originally privileged, the privilege did not bar this evidence. Therefore, the court invoked *Maldonado* as justifying the court's authority "to go so far as to dismiss actions brought [by] those who thumb their nose at court procedure."

Having reviewed Moxie's motions to disqualify Judge Giovan, Judge Giovan's opinion and order denying the initial motion and the chief judge's decision to deny the motion, and Judge Giovan's e-mail communications to the parties, we are not persuaded that this case can be compared to the highly egregious and obstructionist behavior of the plaintiff and her counsel in *Maldonado*, in which the parties deliberately and intentionally flouted the trial court's clear directives and the court was left with no choice but to sanction the plaintiff and her counsel for their repeated unethical conduct. Here, in contrast, even if Moxie can be considered to have been dilatory in filing his motion to disqualify Judge Giovan, the delay does not rise to the level of unacceptable and intolerable conduct that would warrant the serious sanction of dismissal of Moxie's claim for attorney fees as part of the court's inherent authority under *Maldonado*. In particular, unlike in *Maldonado*, where the misconduct of repeatedly publicizing inadmissible evidence was calculated to prevent the defendants from receiving a fair trial and could not be undone, we fail to understand how Moxie's motions for disqualifications can be viewed as prejudicial to the estate's or the Hubbards' ability to receive a fair determination of the attorney-fee issue, or why, to the extent that motions were found to be unpersuasive or lacking in merit, the drastic sanction of dismissal was necessary as opposed to simply denying the motions, or even imposing another appropriate sanction short of dismissal if the court believed that the motion was not well grounded in fact, warranted by existing law, or filed for an improper purpose, MCR 1.109(E)(5) and (6). Additionally, while Moxie did include new allegations of actual bias in his motion before the chief judge, new circumstances arose after the filing of his original motion before Judge Giovan, which explained the additions. The record does not otherwise indicate that Moxie's pursuit of the motion before the chief judge was motivated by unethical or improper conduct.

The circumstances in this case are vastly different than the pervasive unethical conduct that occurred in *Maldonado*, in which the trial court had twice warned the parties to curb their behavior and made them aware of the potential consequences of continuing their misconduct. In contrast, Moxie was not acting to influence the court, jurors, or any other officials by unethical means. Additionally, there has not been any other showing of attorney misconduct by Moxie in

contravention of MRPC 8.4. See *Maldonado*, 476 Mich at 392. In sum, there are genuine issues of material fact regarding whether Moxie can recover attorney fees under a quantum meruit theory, and dismissal of Moxie's claim was not warranted under *Maldonado*. Accordingly, we reverse the trial court's dismissal of Moxie's claim for attorney fees and remand to that court for further proceedings on that claim.

## III. REASSIGNMENT TO ANOTHER JUDGE ON REMAND

In Docket No. 357997, Moxie also argues that this Court should order this case to be reassigned to another judge on remand. We disagree.

Moxie's arguments in support of this request are related to arguments he made in a motion to disqualify Judge Giovan from presiding over this case, which both Judge Giovan and Chief Judge Timothy Kenny denied. Thus, it is appropriate to consider that motion and the decisions denying that motion in evaluating Moxie's request for reassignment to another judge on remand.

This Court reviews an order granting or denying a motion to disqualify a judge for an abuse of discretion. *Czuprynski v Bay Circuit Judge*, 166 Mich App 118, 124; 420 NW2d 141 (1988); see also *In re MKK*, 286 Mich App 546, 564; 781 NW2d 132 (2009) (stating that this Court "review[s] a trial court's factual findings regarding a motion for disqualification for an abuse of discretion and its application of the facts to the law de novo").

In *Swain v Morse*, 332 Mich App 510, 537; 957 NW2d 396 (2020), this Court stated that the prevailing concern when considering whether to remand a case to a different trial judge is whether the appearance of justice is best served if a different judge presides over the case. The following factors should be considered:

> [W]hether the original judge would have difficulty in putting aside previously expressed views or findings, whether reassignment is advisable to preserve the appearance of justice, and whether reassignment will not entail excessive waste or duplication. [*Id*. (quotation marks and citations omitted).]

"A trial judge is presumed to be fair and impartial, and any litigant who would challenge this presumption bears a heavy burden to prove otherwise." *Id*. (quotation marks and citation omitted). As this Court recently recognized, reassignment to a different judge is not necessary even if the trial court reached a wrong legal conclusion, because repeated adverse legal rulings, even if erroneous, are not disqualifying for the trial judge. *Kuebler v Kuebler*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 362488); slip op at 30, lv pending.

Judge Giovan erred by dismissing Moxie's claim for attorney fees because there are genuine issues of material fact regarding whether Moxie can recover his attorney fees under a quantum meruit theory and dismissal of Moxie's claim is not warranted under *Maldonado*. Admittedly, the record reflects that Judge Giovan expressed strong views regarding Moxie's conduct, such as by referring to his motion to disqualify as "terminally late and terminally groundless," and by referring to the "tardiness and vacuity" of Moxie's attempt to disqualify him and characterizing it as an effort to lie in wait. While Judge Giovan did use strong language, his statements are supported by the record, given that Moxie did not file his motion to disqualify until

February 8, 2021, almost two years after Judge Giovan was assigned the case, and more than a year after he was assigned to preside over the attorney-fee dispute portion of the case. Moreover, Judge Giovan presided over the evidentiary hearing on the issue of attorney fees that commenced in July 2020, and Moxie did not seek to disqualify Judge Giovan at that time. Even when Judge Giovan ruled on an evidentiary issue pertaining to Moxie's alleged lack of expectation of payment for the attorney fees, deciding that issue adversely to Moxie, the issue of disqualification was not raised. As Chief Judge Kenny noted, the fact that Judge Giovan was a member of the same court as Susan Hubbard "was no sudden discovery." Accordingly, Judge Giovan's and Chief Judge Kenny's findings that Moxie's motion to disqualify Judge Giovan clearly was not timely filed under MCR 2.003(D)(1)(a) are supported by the record.

In sum, to the extent that Judge Giovan used strong language when disapproving the motion to disqualify on a delayed basis, his views were shared by the chief judge and have not been shown to be erroneous or an unfair mischaracterization of the record. Additionally, while Judge Giovan also expressed strong views regarding Moxie's conduct, a trial court's comments directed toward counsel, the parties, or their cases, even if hostile or critical, generally will not rise to the level of disqualifying bias. *TT v KL*, 334 Mich App 413, 432-433; 965 NW2d 101 (2020). Throughout the lower court proceedings, Judge Giovan remained fair, impartial and unbiased, and nothing suggests he was not committed to the administration of justice, or that he would have difficulty setting aside previously expressed views or findings found to be erroneous. Accordingly, we are not persuaded that reassignment to another judge on remand is necessary to preserve the appearance of justice.

In a footnote, Moxie asserts, for the first time, that Chief Judge Kenny's March 26, 2019 order assigning this case to Judge Giovan as a visiting judge is unconstitutional. Moxie concedes that he never raised this issue in the trial court. Michigan follows the "raise or waive" rule whereby an issue that is not raised in the trial court generally will be considered waived. *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008). Accordingly, apart from the fact that this issue is mentioned only in a footnote, because this issue was not raised in the trial court, it is waived and we decline to consider it.

IV. IMPOSITION OF SANCTIONS

In Docket No. 359571, Moxie and MacWilliams argue that the trial court erred by assessing sanctions against them under MCL 600.2591 and MCR 1.109(E)(6). We agree.

"This Court will not disturb a trial court's finding that an action was frivolous unless that finding was clearly erroneous." *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 408; 651 NW2d 756 (2002). Likewise, a trial court's determination that sanctions are appropriate under MCR 1.109 is reviewed for clear error. See *Lawrence v Burdi*, 314 Mich App 203, 220; 886 NW2d 748 (2016) (reviewing an award of sanctions under former MCR 2.114). "A finding is clearly erroneous if, after a review of the record, this Court is left with a definite and firm conviction that a mistake was made." *Id.*

MCL 600.2591 provides:

(1) Upon motion of any party, if a court finds that a civil action[1] or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney.

(2) The amount of costs and fees awarded under this section shall include all reasonable costs actually incurred by the prevailing party and any costs allowed by law or by court rule, including court costs and reasonable attorney fees.

(3) As used in this section:

(a) "Frivolous" means that at least 1 of the following conditions is met:

(*i*) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.

(*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

(*iii*) The party's legal position was devoid of arguable legal merit.

Similarly, MCR 1.109(E) provides, in pertinent part:

(5) *Effect of Signature*. The signature of a person filing a document, whether or not represented by an attorney, constitutes a certification by the signer that:

(a) he or she has read the document;

(b) to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law; and

(c) the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

(6) *Sanctions for Violation*. If a document is signed in violation of this rule, the court, on the motion of a party or on its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the

---

[1] MCL 600.1901 provides that "[a] civil action is commenced by filing a complaint with the court."

reasonable expenses incurred because of the filing of the document, including reasonable attorney fees. The court may not assess punitive damages.

With respect to the imposition of sanctions under MCR 1.109(E)(6), the trial court's ruling is not entirely clear as to the document or documents that it believed were filed in violation of the court rule. The court previously stated that it was adopting the reasoning in the Hubbards' motion for summary disposition with regard to sanctions, but it subsequently stated that sanctions would be granted under the court rule (1) for the reasons stated in its opinion denying Moxie's motion for disqualification, (2) "for [Moxie's] subsequent behavior" described in the trial court's opinion granting summary disposition, and (3) for the filing of the motion for disqualification in the first instance.

Preliminarily, we are uncertain about by the trial court's apparent reliance on the motion for disqualification as supporting the imposition of sanctions under MCR 1.109(E)(6) when granting the Hubbards' motion for summary disposition five months later. In its opinion denying Moxie's motion for disqualification, the trial court noted that both the estate and the Hubbards had requested sanctions associated with the filing of the motion. The court stated that "the request for sanctions is deferred pending the final result of the motion for disqualification." The chief judge denied the motion requesting the trial court's disqualification on April 15, 2021 and, notably, denied a request for sanctions associated with that motion. When the Hubbards filed their motion for summary disposition, they again requested sanctions. Although they referenced in part Moxie's motion for disqualification, they principally argued that Moxie's motion for attorney fees was itself frivolous and warranted sanctions under MCL 600.2591 and MCR 1.109(E)(6). Furthermore, although the trial court previously noted that both the estate and the Hubbards had requested sanctions associated with the filing of the motion for disqualification, and the estate again requested sanctions in its concurrence with the Hubbards' motion for summary disposition, the court expressly declined to award sanctions to the estate.

In any event, the record does not support a conclusion that Moxie's motion for disqualification was not well grounded in fact or warranted by existing law, or was filed for an improper purpose, including to harass another party or cause unnecessary delay. MCR 1.109(E)(5)(b) and (c). While Judge Giovan and Chief Judge Kenny both found that Moxie's motion was not timely filed, Moxie filed the motion within 14 days after being advised that Judge Giovan was assuming Judge Lita Popke's docket, which he argued made Judge Giovan a colleague of Susan Hubbard, who also is a Wayne Circuit Court judge and a potential witness in this case. As Moxie asserted, this assignment placed Judge Giovan in a position whereby he would be acting as the trier of fact on a case in which another sitting judge was expected to testify as a necessary witness, which Moxie argued created an appearance of impropriety. In support of his motion, Moxie relied on Judicial Ethics Opinion JI-57, which states that absent actual bias, a presiding judge is not disqualified from a matter in which another judge of the same court is testifying as a witness, if the presiding judge is not the trier of fact, or the testifying judge is not a necessary witness regarding a contested fact. Although we do not disagree with Judge Giovan's or Chief Judge Kenny's observations that the motion was not timely filed, the record does not support Judge Giovan's statement that Moxie was "lay[ing] in wait with the motion" and filed it in an effort to subvert and undermine the lower court proceedings when he saw that matters were not faring well for him. Thus, we cannot conclude that the motion to disqualify was filed merely to harass the trial court, the other litigants, "or to cause unnecessary delay." MCR 1.109(E)(5)(c).

-10-

The trial court also stated that it was assessing sanctions because of Moxie's "subsequent behavior," which presumably involved his subsequent allegations of actual bias against Judge Giovan in the motion for disqualification filed before Chief Judge Kenny. However, as stated, these allegations were based on new circumstances that arose after the filing of Moxie's original motion before Judge Giovan, and the record does not otherwise indicate that Moxie's pursuit of the motion before Chief Judge Kenny was motivated by Moxie's unethical or improper conduct.

The trial court also accused Moxie of misrepresenting that the trial court did not make a ruling regarding an evidentiary matter at a hearing on September 11, 2020. We note, however, that for reasons unclear from the record, the hearing was not transcribed. Because a record of that hearing does not exist, we are unable to conclude that Moxie knowingly misrepresented what occurred at that hearing, even if the trial court's recollection of the hearing may be different.

In sum, the record does not support the trial court's finding that sanctions were warranted under MCR 1.109(E)(6).

We similarly conclude that sanctions were not warranted under MCL 600.2591. Moxie asserted that he was entitled to a charging lien because he provided legal services, first to Joanna and then the estate, and had "invested significant time and resources into pursuing the claims in this litigation" including by reviewing and responding to motions and attending court hearings. In their motion for summary disposition, the Hubbards challenged the legality of Moxie's claim for attorney fees and argued that any contingency-fee agreement was required to be in writing. The Hubbards also challenged Moxie's ability to recover attorney fees under a quantum meruit theory, given that the alleged contingency-fee agreement with Joanna was not in writing, and his claim did not arise from circumstances in which he had withdrawn from a valid contingency-fee agreement, or a valid agreement was wrongfully terminated.

The trial court ruled that it was imposing sanctions under MCL 600.2591(1), but did not identify the subsection of MCL 600.2591(3)(a) that it believed supported the imposition of those sanctions. Although the parties disputed the scope of Moxie's role in this case and the nature of any agreement he had with Joanna, they did not dispute that he rendered legal services on behalf of the estate. Indeed, following the evidentiary hearing in July 2020, the trial court expressly found that Moxie "did perform services" and even agreed that, although Moxie could not recover any contingency fee, he was entitled to pursue a claim for recovery of attorney fees under a quantum meruit theory.

Therefore, the record does not support a finding that Moxie's claim for recovery of attorney fees was devoid of arguable legal merit or was based on facts that he did not reasonably believe were true. Further, the parties have not contended that Moxie asserted the lien to harass, embarrass, or injure the estate or the Hubbards. Indeed, the primary basis for the trial court's decision to dismiss Moxie's charging lien was its conclusion that his conduct during the case supported dismissal under *Maldonado*, but as explained earlier, his conduct did not rise to the level of the pervasive unacceptable and intolerable conduct encountered in *Maldonado*. Accordingly, for the foregoing reasons, we vacate the trial court's judgment of sanctions. Given this disposition, it is unnecessary to address Moxie's and MacWilliams's arguments challenging the amount of sanctions imposed.

-11-

## V. CONCLUSION

Because there are genuine issues of material fact regarding Moxie's claim for attorney fees under a quantum meruit theory, and the dismissal of Moxie's claim was not warranted under *Maldonado*, we reverse the trial court's order dismissing Moxie's claim for attorney fees and remand to that court for further proceedings on that claim. We also reverse the trial court's imposition of sanctions against Moxie and MacWilliams, and vacate the corresponding judgment for sanctions entered against them. We deny Moxie's request that this case be reassigned to another judge on remand.

Reversed in part, vacated in part, and remanded to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Michael J. Riordan
/s/ Sima G. Patel