*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KEITH LINK,

       Plaintiff-Appellee,

and

BARRY KNOWLES,

       Plaintiff,

and

TM, a legally incapacitated person, by Guardian
MONICA WILSON,

       Intervening Plaintiff,

v

FARM BUREAU GENERAL INSURANCE
COMPANY OF MICHIGAN and ROBERT
PAVICH,

       Defendants,

and

SKUPIN & LUCAS PC,

       Appellant.

UNPUBLISHED
November 30, 2023

No. 361474
Genesee Circuit Court
LC No. 19-112432-NI

Before: MURRAY, P.J., and CAMERON and PATEL, JJ.

PER CURIAM.

-1-

Appellant appeals by delayed leave granted[1] the order denying in part its motion for enforcement of an attorney lien. The trial court granted appellant's motion regarding reimbursement for expended costs but denied its motion regarding quantum meruit attorney fees. We reverse and remand for further proceedings.

## I. BACKGROUND

This case arises from a motor vehicle accident. The vehicle involved was insured by defendant, Farm Bureau General Insurance Company of Michigan. Plaintiff Keith Link was driving. Plaintiff, Barry Knowles, was riding in the front passenger seat and intervening plaintiff, TM, was in a rear passenger seat. Defendant, Robert Pavich, struck the vehicle driven by plaintiff, injuring plaintiff, Knowles, and TM.

Plaintiff retained appellant to represent him in personal injury protection (PIP) benefits and underinsured motorist (UIM) benefits actions against Farm Bureau and Pavich. Plaintiff's case was initially assigned to appellant's attorney, Casey J. Majestic Jr. The attorney-client relationship between appellant and plaintiff was governed by two contingent fee agreements. The first contingent fee agreement pertained to the recovery of PIP benefits, while the second contingent fee agreement pertained to the recovery of UIM benefits. The UIM benefits contingent fee agreement states, in relevant part:

> 1. Attorney agrees to represent Client. Client agrees to cooperate fully with Attorney. Neither party will settle the case without the other's approval. Attorney may, in his discretion, withdraw from the case at any time with reasonable notice to Client. If Client discharges Attorney, Attorney may elect to be paid on an hourly basis for the time and costs invested or to retain a one-third lien on any recovery.

> 2. Client has been advised that Client may represent themself [sic] without an attorney and that Attorney may be employed under other fee arrangements in which Attorney is compensated for the reasonable value of his services, such as on an hourly or per diem basis.

> 3. Client will pay Attorney one-third of any settlement, verdict, or recovery of past, present, or future monies awarded, after deducting the costs and expenses referred to in the paragraphs below. Attorney will have a one-third lien on any settlement, verdict, or recovery arising out of this claim. However, if the court awards an actual attorney fee against the opposing party, the attorney may at any time elect, in writing, to receive the court-awarded attorney fee instead of the one-third fee.

Plaintiff and Knowles filed suit against Farm Bureau and Pavich, alleging Farm Bureau owed them PIP and UIM benefits under the terms of the applicable insurance policy, and that Pavich breached his duty to operate his vehicle in a safe and prudent manner. Farm Bureau answered the complaint, denying the allegations as untrue, asserting various affirmative defenses,

---

[1] *Link v Farm Bureau Gen Ins Co of Mich*, unpublished order of the Court of Appeals, entered November 9, 2022 (Docket No. 361474).

and objecting to plaintiff's and Knowles's nonjoinder of essential parties. The trial court entered an order allowing joinder of intervening plaintiff, TM, a legally incapacitated person, by her guardian, Monica Wilson. TM's complaint similarly alleged Pavich negligently operated his vehicle and, because Pavich was an underinsured motorist, Farm Bureau owed TM UIM benefits for the injuries she sustained in the accident. The trial court ordered the parties to mediation under MCR 2.411.[2] In the event the case was not resolved through mediation, the trial court referred the case to case evaluation.

TM moved to approve a settlement and filed a joint motion with plaintiff and Knowles to approve interpleader of funds regarding plaintiff's, Knowles's, and TM's UIM benefits claims. Because Pavich was underinsured, the parties agreed his insurance agency, Progressive Insurance Company, and Farm Bureau would "interplead their policy limits of $40,000.00 [] and $260,000.00 [], for a total of $300,000.00, to the Court Clerk, in return for one joint release from intervening plaintiff and plaintiffs for each carrier." The trial court granted the motion and entered a stipulated order to interplead funds, discharging Farm Bureau and Pavich from any further liability regarding the UIM claims. Because no agreement between TM, plaintiff, and Knowles was reached regarding the allocation of the $300,000, the parties were ordered to "attempt to agree on a resolution for the division of the deposited proceeds."

Plaintiff and Joseph F. Lucas, another attorney with appellant, began exchanging e-mails regarding plaintiff's case. In the e-mails, plaintiff and Lucas disagreed, at length, regarding the value of plaintiff's case and the likelihood of success at trial. Lucas encouraged plaintiff to accept a $75,000 facilitation offer, believing plaintiff would be unlikely to obtain a more favorable outcome at trial and would incur case evaluation sanctions. Plaintiff, dissatisfied with appellant's representation, disagreed with the advice and was adamant he wanted to proceed to trial. Appellant insisted plaintiff front payment for the cost of deposing plaintiff's doctors to prepare for trial. Plaintiff replied: "If you feel you can't go to trial and fight for me and get me [$]100,000 then you can get off the case." Lucas e-mailed plaintiff, stating: "Since we cannot agree on the direction of the case, and I am reluctant to spend $5-10K on doctor depositions given the pending settlement offer, I am going to file a motion to withdraw as your attorney."

Appellant moved to withdraw under MCR 2.117(C)(2). Although appellant, through Lucas, recommended plaintiff accept the $75,000 case evaluation award "based on the medical proofs related to the respective claims," plaintiff refused to follow appellant's advice and rejected the case evaluation. Because appellant and plaintiff had irreconcilable differences regarding the value of plaintiff's claims and "the future direction of the lawsuit," appellant requested the trial court allow it to withdraw as counsel and "recognize an Attorney Charging Lien on the file for costs and attorney time expended in the representation of [plaintiff]." During the motion hearing, appellant discussed the breakdown of the attorney-client relationship with plaintiff and affirmed it did not accept the case evaluation award per plaintiff's instructions. Appellant argued the parties had irreconcilable differences because of the inability to reach an agreement on how to proceed with the case. Plaintiff denied he discharged appellant, but agreed to allow appellant to withdraw.

---

[2] Plaintiff and Knowles settled their PIP benefits claims in mediation. Plaintiff settled his PIP benefits claim against Farm Bureau for $12,000. Knowles agreed to dismiss his PIP benefits claim against Farm Bureau with prejudice.

-3-

Appellant moved for entry of an order allowing withdrawal and requesting an order requiring any settlement check be issued payable to plaintiff, appellant, and any future counsel. While appellant's motion was pending, attorney Brian T. Dailey filed an appearance on behalf of plaintiff. Shortly thereafter, the trial court entered an order authorizing appellant's withdrawal, which did not include language regarding payment of the settlement check to plaintiff, appellant, and plaintiff's current attorney.

Appellant moved to enforce a lien for costs and fees, arguing an attorney with a contingent fee agreement who rightfully withdraws from representation is entitled to compensation for the reasonable value of his services rendered before withdrawal on a quantum meruit basis. Appellant contended it vigilantly pursued plaintiff's UIM benefits claim, participating in facilitation and case evaluation, and informed plaintiff the $75,000 case evaluation was a fair assessment of the case value. Because plaintiff rejected the case evaluation, appellant believed it necessary to obtain depositions of plaintiff's doctors to prepare for trial, which "entailed significant expense," necessitating plaintiff advance money for the anticipated costs. Appellant claimed plaintiff refused to pay, and informed appellant he was seeking new counsel and appellant should withdraw. Although appellant was unsure whether a settlement had been reached, because appellant "performed all of the discovery, obtained all of the records, attend[ed] a Facilitation and a Case Evaluation and secured a settlement offer of $75,000," appellant requested that the trial court enforce a charging lien of $36,037.41, or, alternatively, hold appellant's contribution to the lawsuit recovery is 85%, and award $3,574.91 in costs.

Plaintiff denied appellant was entitled to quantum meruit recovery because appellant violated Michigan Rule of Professional Conduct (MRPC) 1.16 and public policy by failing to adhere to its own contingent fee agreement. Plaintiff rejected the case evaluation award and informed appellant of his desire to go to trial. In response, appellant insisted plaintiff pay for physician depositions up front to continue litigation. When plaintiff refused to pay, appellant withdrew from plaintiff's case. Plaintiff never discharged appellant. Instead, appellant pressured plaintiff to settle and abandoned the case, which did not constitute good cause for withdrawal or to allow recovery under a quantum meruit theory.

During the hearing, appellant claimed, under MRPC 1.16, its withdrawal did not materially or adversely impact plaintiff because plaintiff settled the case for $75,000, which is the amount appellant encouraged plaintiff to accept. Appellant believed this was a reasonable offer and a better outcome than what plaintiff could obtain at trial based on plaintiff's medical records, failure to mitigate his damages, criminal history, and status as a registered sex offender. Despite appellant's recommendation, plaintiff imprudently refused to accept the facilitation offer or case evaluation award. Plaintiff also "refused to renegotiate any change in our attorney fee relationship whereby he would advance any money [to depose the] medical doctors who treated him." Appellant argued renegotiation did not constitute abandonment of plaintiff's case; appellant only withdrew from representation because plaintiff told Lucas to "get off the case." Plaintiff conceded appellant was entitled to costs already paid.

The trial court denied appellant's motion for enforcement of an attorney lien, stating, in relevant part:

> Attorney Lucas had a professional obligation to "abide by a client's decision whether to accept an offer of settlement." MRPC 1.2(a). Rather than doing so,

-4-

however, Attorney Lucas, in direct contravention of the retainer agreement that he presumably prepared, gave [plaintiff] the option to either pay litigation costs up front or to hire a different attorney. This put [plaintiff] in a position of either accepting a settlement that he didn't want or to be left without an attorney prior to trial. Attorney Lucas then followed through with this motion to withdraw, despite not being able to cite as a basis any of the accepted grounds outlined in MRPC 1.16. [Plaintiff's] fortunate hiring of [a new attorney] does [not] change the fact that he was left high and dry before trial.

Based upon the above, the Court finds that [plaintiff] did not wrongfully terminate Attorney Lucas. It also finds that Attorney Lucas did not rightfully withdraw. Rather, it finds that Attorney Lucas did not abide by his client's decision not to settle when he forced him to either pay litigation costs in contravention of the retainer agreement or be abandoned by counsel prior to trial. As such, the granting of a lien with regard to attorney fees is not merited.

The trial court did award appellant expended costs. This appeal followed.

## II. STANDARDS OF REVIEW

We review the trial court's decision on whether to impose an attorney charging lien for an abuse of discretion. *Polen v Melonakos*, 222 Mich App 20, 24; 564 NW2d 467 (1997). "An abuse of discretion occurs if the trial court's decision falls outside the range of principled outcomes." *Macomb Co Dep't of Human Servs v Anderson*, 304 Mich App 750, 754; 849 NW2d 408 (2014). "Whether a lien is authorized in a particular case is a question of law" which we review de novo. *Ypsilanti Charter Twp v Kircher*, 281 Mich App 251, 281; 761 NW2d 761 (2008). A trial court's decision regarding a motion to withdraw as counsel is also reviewed for an abuse of discretion. *In re Withdrawal of Attorney*, 234 Mich App 421, 431; 594 NW2d 514 (1999). "This Court reviews questions regarding the proper interpretation of contractual language de novo, giving contractual terms their ordinary meaning when those terms are not defined in the contract itself." *Barton-Spencer v Farm Bureau Life Ins Co*, 500 Mich 32, 39; 892 NW2d 794 (2017). "Whether contractual language is ambiguous is also a question of law reviewed de novo." *Id*. "Questions of statutory interpretation, construction, and application are reviewed de novo." *Johnson v Johnson*, 329 Mich App 110, 118; 940 NW2d 807 (2019). Specifically:

We review de novo the interpretation of the rules of professional conduct. When interpreting rules promulgated by this Court, such as the Michigan Rules of Professional Conduct, we are guided by the same principles that pertain to statutory interpretation. Accordingly, "we seek to discern the ordinary meaning of the language in the context of the [court rule] as a whole." [*Law Offices of Jeffrey Sherbow, PC v Fieger & Fieger, PC*, 507 Mich 272, 282-283; 968 NW2d 367 (2021) (citations omitted; alteration in original).]

## III. RIGHTFUL WITHDRAWAL

Appellant argues the trial court abused its discretion by denying its motion to enforce an attorney charging lien and finding appellant did not rightfully withdraw because: (1) plaintiff dismissed appellant, making withdrawal mandatory; (2) the contingent fee agreement permitted

appellant to withdraw; and (3) appellant did not engage in prejudicial misconduct or violate public policy.

## A.  DISCHARGE FROM REPRESENTATION

Appellant contends it rightfully withdrew because plaintiff discharged it from representation, making withdrawal mandatory under MRPC 1.16.

> [A]n attorney who is discharged before completing contracted-for work is generally entitled to payment for valuable services rendered before the discharge . . . as long as a discharged attorney does not engage in disciplinable misconduct prejudicial to the client's case or conduct contrary to public policy that would disqualify any quantum meruit award, a trial court should take into consideration the nature of the services rendered by an attorney before his discharge and award attorney fees on a quantum meruit basis.  [*Polen*, 222 Mich App at 27.]

MRPC 1.16 states, in relevant part:  "Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, *shall withdraw* from the representation of a client if . . . *the lawyer is discharged*."  MRPC 1.16(a)(3) (emphases added).  As we have recognized, "no formal discharge by the client is required, and the termination of an attorney-client relationship can be implied by the actions or inactions of the client." *Estate of Mitchell v Dougherty*, 249 Mich App 668, 684; 644 NW2d 391 (2002).  For example, "the retention of alternate counsel is sufficient proof of the client's intent to terminate the attorney's representation." *Id*.

The evidence shows plaintiff and appellant, through its assigned attorneys, exchanged e-mails, in which they disagreed about the appropriate course of plaintiff's case.  Plaintiff sought to recover $100,000 in damages and proceed to trial.  In contrast, appellant believed the $75,000 facilitation offer and case evaluation award was a more prudent option for plaintiff to accept.  Because plaintiff wanted to proceed to trial, Lucas, acting on behalf of appellant, attempted to have plaintiff front the costs of the depositions needed for trial so appellant would not incur additional costs in plaintiff's case.  Plaintiff responded, stating:  "If you feel you can't go to trial and fight for me and get me [$]100,000 then you can get off the case."  Appellant responded:

> If you want a trial so badly and believe that you will make such a large recovery, it makes perfect sense for you to fund the doctor deposit[i]ons.  If you won't do that, you should "shop your file" around and see if you can find another attorney who wants to take it on.

Plaintiff replied, expressing dissatisfaction with how his case was handled, but made no further mention of discharging appellant.  Shortly after, appellant indicated counsel would be withdrawing from plaintiff's case, explaining:  "Since we cannot agree on the direction of the case, and I am reluctant to spend $5-10K on doctor depositions given the pending settlement offer, I am going to file a motion to withdraw as your attorney."  When read in context, while it does not appear plaintiff indicating to "get off the case" was a definitive discharge of appellant, plaintiff's statement does imply a breakdown of the attorney-client relationship, which appellant acknowledged in the withdrawal e-mail and at the motion hearing.  Further, during the hearing, plaintiff expressly stated he was not discharging appellant.  Because plaintiff did not discharge

appellant, withdrawal was not mandatory under MRPC 1.16(a)(3), and appellant was not entitled to relief on this basis.

## B. ATTORNEY MISCONDUCT

We agree with appellant, however, that it rightfully withdrew from plaintiff's case because the contingent fee agreement permitted withdrawal and it, or its attorneys, did not engage in prejudicial misconduct or violate public policy.

At the outset, we note the contingent fee agreement states:

> 1. Attorney agrees to represent Client. Client agrees to cooperate fully with Attorney. Neither party will settle the case without the other's approval. *Attorney may, in his discretion, withdraw from the case at any time with reasonable notice to Client.* If Client discharges Attorney, Attorney may elect to be paid on an hourly basis for the time and costs invested or to retain a one-third lien on any recovery. [(emphasis added.)]

Under the plain language of the contingent fee agreement, appellant, in its discretion, was permitted to withdraw from representation *at any time* so long as it provided reasonable notice.

After several exchanges where plaintiff refused to accept the facilitation offer and case evaluation award, in a March 2021 e-mail, appellant informed plaintiff he "should 'shop [his] file' around" to see if he could "find another attorney who wants to take it on." A few months later, in June 2021, appellant informed plaintiff of the intention to withdraw, stating:

> Since we cannot agree on the direction of the case, and I am reluctant to spend $5-10K on doctor depositions given the pending settlement offer, I am going to file a motion to withdraw as your attorney. I will advise you of the motion hearing date and you can attend. Please take steps to find another attorney.

Based on these exchanges, appellant complied with the contingent fee agreement's reasonable notice requirement by informing plaintiff of appellant's intent to withdraw and that plaintiff would need to seek alternative representation. Thus, appellant rightfully withdrew from representation under the plain language of the parties' contingent fee agreement.

Additionally, regardless of whether the contingent fee agreement permitted appellant to withdraw at its discretion, it rightfully withdrew from representation under MRPC 1.16. "[Q]uantum meruit recovery of attorney fees is barred when an attorney engages in misconduct that results in representation that falls below the standard required of an attorney (e.g., disciplinable misconduct under the Michigan Rules of Professional Conduct) or when such recovery would otherwise be contrary to public policy." *Polen*, 222 Mich App at 26. "An attorney who withdraws from a suit without cause loses his inchoate right to a lien on the ultimate recovery. . . . But where an attorney is justified in refusing to continue in a case, he does not forfeit his lien for services already rendered." *Id*. at 24 (quotation marks and citation omitted). A lawyer has good cause to withdraw where there has been a total breakdown in the attorney-client relationship. See *Ambrose v Detroit Edison Co*, 65 Mich App 484, 488; 237 NW2d 520 (1975). MRPC 1.16 states, in relevant part:

(b) Except as stated in paragraph (c), after informing the client that the lawyer cannot do so without permission from the tribunal for the pending case, *a lawyer may withdraw from representing a client if withdrawal can be accomplished without material adverse effect on the interests of the client*, *or* if:

(1) the client persists in a course of action involving the lawyer's services that the lawyer reasonably believes is criminal or fraudulent;

(2) the client has used the lawyer's services to perpetrate a crime or fraud;

(3) the client insists upon pursuing an objective that the lawyer considers repugnant or imprudent;

(4) the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled;

(5) the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client; or

(6) other good cause for withdrawal exists. [MRPC 1.16(b) (emphasis added).]

Under MRPC 1.16(b), appellant was permitted to withdraw if it could do so without having a materially adverse effect on plaintiff's case *or* by proving one of the enumerated circumstances existed.[3]

According to appellant, its withdrawal did not materially or adversely impact plaintiff because plaintiff settled the case for $75,000, which is the amount it had encouraged plaintiff to accept after facilitation and case evaluation. However, appellant failed to provide evidence verifying the settlement amount paid on plaintiff's claim. In fact, in its motion to enforce the attorney charging lien, appellant conceded it was unsure whether a settlement had been reached. Thus, appellant's argument lacks merit.

Appellant also argued that withdrawal was justified under MRPC 1.16 because: (1) plaintiff insisted on proceeding to trial, despite appellant's concern such action was an imprudent objective because of issues involving plaintiff's medical records, the failure to mitigate his damages, criminal history, and status as a registered sex offender; (2) if appellant honored plaintiff's desire to go to trial, appellant would be forced to incur significant expenses; and (3) the parties could not agree on the direction of plaintiff's case, resulting in a breakdown in the attorney-client relationship.

---

[3] The word "or" is a disjunctive term, and "is generally construed as referring to an alternative or choice between two or more things." *Hofmann v Auto Club Ins Ass'n*, 211 Mich App 55, 69; 535 NW2d 529 (1995).

Based on the undisputed evidence, appellant had good cause to withdraw under MRPC 1.16(b)(3), (5) and (6) because plaintiff wanted to pursue an objective appellant found imprudent, resulting in a breakdown in the attorney-client relationship. Under MRPC 2.1, an attorney has a duty to "exercise independent professional judgment" and "render candid advice." MRPC 2.1. Appellant, through Lucas, was abiding by that duty to offer professional advice when encouraging plaintiff to accept the case evaluation award based on the belief it would be imprudent to proceed to trial because it was unlikely any award would meet or exceed $75,000. Plaintiff disregarded appellant's advice and insisted on going to trial. Had appellant proceeded as plaintiff wished, appellant would have incurred additional costs to depose plaintiff's medical doctors, and possible case evaluation sanctions. As the e-mails show, there was a complete disagreement on how to proceed with plaintiff's case, and the attorney-client relationship had deteriorated. Because appellant had good cause to withdraw under MRPC 1.16, the trial court erred by finding appellant did not rightfully withdraw.

Because the trial court did not conduct a hearing to determine what services were actually rendered and whether those services were reasonable, we remand to the trial court to conduct a hearing to determine the amount of appellant's attorney fees. *Souden v Souden*, 303 Mich App 406, 415; 844 NW2d 151 (2013).

## IV. CONCLUSION

The trial court's order denying appellant's motion to enforce an attorney charging lien is reversed, and the matter is remanded to determine the amount of reasonable attorney fees appellant is entitled to recover. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Thomas C. Cameron
/s/ Sima G. Patel

-9-